UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>ALFRED BRADLEY ADKINS,  )<br>)<br>Defendant.  )<br>) | No. 5:16-CR-22-DCR-REW<br><br>RECOMMENDED DISPOSITION |

\*\*\* \*\*\* \*\*\*

Defendant Alfred Bradley Adkins, a clinical psychologist, faces an Indictment charging numerous counts, centering on an alleged 8-year Social Security fraud scheme involving thousands of claims and $600 million in alleged losses. *See* DE #1 (Indictment).

As pertinent, Adkins moved to dismiss the Indictment due to an alleged grant of informal / pocket immunity. DE #132 (Motion).[1] The United States responded. DE #149 (Response). The matter is ripe for consideration. For the following reasons, the Court **RECOMMENDS** that the District Court **DENY** DE #132 to the extent it raises an immunity claim.

*Legal Standard*

"[I]nformal immunity," also known as "pocket immunity," "arises by way of assurances by prosecutors, either orally or by letter, to a potential grand jury witness that he will be immune from any prosecution based upon that testimony. Such decisions are

---

[1] DE #132 also contains a distinct preindictment delay dismissal theory, which the Court addressed by separate recommendation. DE #177.

1

made informally, outside the supervision of a court. The legality of granting informal immunity has been upheld in a number of circuits." *United States v. Turner*, 936 F.2d 221, 223 (6th Cir. 1991) (citing cases); *see also, e.g.*, *United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir. 2006) ("So called 'pocket immunity' (also called 'informal immunity') . . . hinges on the prosecutor's informal assurance of immunity; this approach bypasses the formalities required to grant statutory immunity."); *United States v. Friedrick*, 842 F.2d 382, 393 n.14 (D.C. Cir. 1988) (stating, "Grand jury witnesses in the federal system normally are not automatically immunized by virtue of their testimony," but recognizing pocket immunity's "uniform[] approv[al] by our sister circuits").

Promises of pocket immunity,[2] due to their nature, "are contractual in nature and do not bind other parties not privy to the original agreement." *Turner*, 936 F.2d at 223 (immunity grant in S.D. Fla. did not prohibit prosecution in E.D. Mich.); *see also United States v. Orlando*, 281 F.3d 586, 594 (6th Cir. 2002) ("[W]here a prosecutor assures a grand jury witness that he or she will be immune from prosecution based upon the witness's testimony before the grand jury, the promise is contractual and only binds the parties who are privy to the original agreement."). Indeed, a "federal prosecutor does not have any authority to immunize testimony absent compliance with the requirements of the federal immunity statute. He does, however, possess sole discretion in his particular district with respect to the decision to prosecute." *Turner*, 936 F.2d at 224; *see also United States v. Flemmi*, 225 F.3d 78, 86 (1st Cir. 2000) ("The United States Attorney's implied authority to offer assurances of immunity is closely connected with, and arises

---

[2] Adkins does not argue that he received a "formal grant of statutory immunity." *See Turner*, 936 F.2d at 223 (explaining the formal process); 18 U.S.C. §§ 6001-6005. The Court limits its assessment to issues pertaining to informal, *i.e.*, pocket, immunity. *See* DE #132, at 1.

2

out of, Congress's express grant of authority to prosecute[.]") (holding that "FBI agents lack the authority to promise an informant use immunity"); *United States v. Phibbs*, 999 F.2d 1053, 1081-82 & 1082 n.13 (6th Cir. 1993). Accordingly, "contractual remedies," not automatic "dismissal of the Indictment," "govern if a breach of a grant of informal immunity occurs." *Orlando*, 281 F.3d at 594; *see also Mendizabal*, 214 F. App'x at 501 ("[N]ormal contract law and remedies govern any alleged breach by prosecutors" when the "defendant [is] granted only pocket immunity[.]"). Additionally, law enforcement's "performance of its investigatory duties is meant to complement, not curb, the United States Attorneys' performance of the prosecutorial function." *Flemmi*, 225 F.3d at 86-88 ("[C]ase law . . . contradicts the . . . premise that . . . FBI agents[] may bind the United States either to dismiss an indictment or to refrain from prosecution." (citing numerous cases as a "seemingly impregnable wall of authority")).

However, "when the government," including through law enforcement agents, "makes promises to a defendant who relies on those promises . . ., the government must carry out its representations." *United States v. Streebing*, 987 F.2d 368, 372 (6th Cir. 1993) (citing *Santobello v. New York*, 92 S. Ct. 495 (1971)).[3] "[T]his rule," though, "is subject to two conditions: (1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on the promise." *Id.* "[A] defendant who seeks specifically to enforce a promise . . . must show both that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied on it. . . . If either part of this showing fails, the promise is unenforceable." *Flemmi*, 225 F.3d at 84. According to the First Circuit, "apparent authority [is] not available to bind

---

[3] Only when a defendant receives formal, statutory immunity is he entitled to a *Kastigar* hearing. *Mendizabal*, 214 F. App'x at 501. Adkins has not here asserted receiving statutory immunity or sought a *Kastigar* hearing.

3

the federal sovereign." *Id.* at 85. Indeed, "because . . . FBI agent[s]" generally (at least in the absence of contrary evidence) "lack[] any actual or apparent authority to make . . . promise[s] not to prosecute, [a] [d]istrict [c]ourt d[oes] not err in failing to dismiss the indictment" based on such an agent promise. *Streebing*, 987 F.2d at 373.

*Analysis*

Adkins, without any formal proof, makes various assertions regarding his 2012 interaction(s) with law enforcement agents. Adkins claims that on August 23, 2012, in Pikeville, Kentucky (in the Eastern District of Kentucky), "agents of the United States" (or "Governmental agents") named "McGill and Morton"[4] served him with a subpoena to testify at a grand jury proceeding in the Southern District of West Virginia. DE ##132, at 1; 132-1, at 2. The United States agrees with this part of the background. DE #149, at 3. Per Adkins, the agents advised "that he was not a target of the investigation" and "that he did not need a lawyer." DE #132, at 1.[5] "In reliance upon the[se] assertions," Adkins claims, he "was induced to cooperate[] and testif[y] at the [g]rand [j]ury proceeding." *Id.*; *see also* DE #132-1, at 2 ("Defendant viewed the comments [concerning not being a target and not needing a lawyer] as a grant of immunity conveyed to him by agents acting on the behalf of the Assistant U.S. Attorney Hon. Eumi Choi, who issued the subpoena, and possibly directed agent(s) to complete service."). Adkins in fact testified before the grand jury on September 25, 2012. DE #132-1, at 2; *see also* DE #149, at 3 (United

---

[4] Adkins never identifies the precise law enforcement organization with which McGill and Morton were associated. He gives no other details, such as the individuals' first names or ranks. The United States identified them as Social Security Administration Office of the Inspector General Special Agents Michael McGill and Tim Morton. DE #149, at 3.
[5] The United States denies that these representations occurred. DE #149, at 7.

States agreeing); DE #149-1 (Transcript excerpt, indicating both September 24 and 25 dates).

Assuming all factual allegations in Adkins's motion are true, he is entitled to no relief. Foundationally, no prosecutor (or law enforcement agent) assured Adkins "that he will be immune from any prosecution" based on his grand jury testimony. *Turner*, 936 F.2d at 223-24. Neither of the two agent statements at issue—that Adkins "was not a target of the investigation" and that "he did not need a lawyer"—is, fairly taken, a promise not to prosecute or an assurance of immunity.

Such a promise or assurance, applying familiar contract principles, requires more precise, exacting language.[6] *See, e.g.*, *United States v. Wilson*, 392 F.3d 1055, 1059-60 (9th Cir. 2004) (concluding there was no immunity grant based on agent phrases like "we don't want you, we just want to take this to the next level"); *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990) (concluding that the defendant could not reasonably believe that the prosecutor made a promise of immunity when he said he would "see what we can do"); *United States v. Mannino*, 551 F. Supp. 13, 14-15 (S.D.N.Y. 1982) (concluding that agents telling Mannino "that he was not a target of the investigation" was not "a governmental promise of immunity"—"Agent Johnson did not tell Mannino

---

[6] To define the applicable standards, courts cite to "ordinary contract principles of offer and acceptance," *Sophie*, 900 F.2d at 1071, and the *Restatement (Second) of Contracts*, *Wilson*, 392 F.3d at 1060. As additional useful context, both Kentucky and West Virginia require sufficient definiteness in contract formation and terms. *See, e.g.*, *Collins v. Ky. Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012) ("The elements of a contract are: offer and acceptance, full and complete terms, and consideration."); *Fowler's Bootery v. Selby Shoe Co.*, 117 S.W.2d 931, 933 (Ky. 1938) ("An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."); *Chesapeake Appalachia, LLC v. Hickman*, 781 S.E.2d 198, 215 (W. Va. 2015) ("The elements of a contract are an offer and an acceptance supported by consideration."); *Jefferson v. Simpson*, 98 S.E. 212, 213 (W. Va. 1919) (requiring a contract to be "sufficiently definite and certain in its terms to be enforceable").

he would not be indicted[.]");[7] *United States v. Soc'y of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 469-71 (4th Cir. 1979) (involving explicit promises of "receiving immunity" or "obtain[ing] immunity orders prior to the grand jury appearance"); *United States v. Grimm*, No. 2:08-CR-64 JCM (GWF), 2015 WL 9451039, at *5 (D. Nev. Dec. 23, 2015) ("[T]he supposed beneficiary of an immunity agreement[, Ms. Wolff,] 'understood' that [she] had been offered immunity, but could point to no offer or promise by a government agent. . . . **[T]he prosecution simply indicated to Ms. Wolff that she was not a target of the investigation. In no way does this resemble the offer and acceptance required [for an immunity agreement.]** Ms. Wolff's testimony and statements to counsel that she 'understood' this to be an immunity agreement are thus inapposite[.]" (internal citations removed; emphasis added)). Tellingly, Adkins cites no authority for his contrary position. "[W]hether [Adkins] honestly thought he would be granted immunity does not change the character of the agents' statements." *Wilson*, 392 F.3d at 1060. Neither statement here in any way suggests or indicates an actual immunity grant under the cases' standards.

Additionally, Government agents generally "lack[] any actual or apparent authority to make . . . promise[s] not to prosecute[.]" *Streebing*, 987 F.2d at 373; *see also Flemmi*, 225 F.3d at 86-88 ("[C]ase law . . . contradicts the . . . premise that . . . agents[] may bind the United States either to dismiss an indictment or to refrain from prosecution."); *accord United States v. El-Sadig*, 133 F. Supp. 2d 600, 607 (N.D. Ohio

---

[7] *Mannino* contrasted the phrasing in *United States ex rel. Caserino v. Denno*, 259 F. Supp. 784 (S.D.N.Y. 1966), where the agent told Caserino that "no charges would be brought against him" and that he "will never go to trial in this case," which the court found to reasonably assure Caserino that he would not be prosecuted. *Id.* at 790. Here, of course, in Adkins's story, McGill and Morton said nothing of the sort referenced in *Caserino*.

2001) (treating an agent's immunity promise as an "unauthorized agreement" that an AUSA subsequently ratified); DE #132-1, at 4 (Adkins acknowledging that "[a]s a general rule, it is true that FBI agents are not empowered to contractually bind the [p]rosecutor's [o]ffice[.]").[8]

However, even supposing Adkins makes it over the foundational existence-of-an-agreement hurdle and assuming "the government may be bound by an unauthorized agreement if a properly authorized official subsequently ratifies it," "no express ratification transpired here[,]" *Flemmi*, 225 F.3d at 90, thus signifying that Adkins did not receive an actionable immunity grant. If agents here made an immunity promise, no prosecutor ratified it. Quite to the contrary—the AUSA (apparently named "Mr. Ellis") examining Adkins before the grand jury confirmed, at the examination threshold, that Adkins did not have a lawyer and that he was not then a target of the investigation, but the AUSA explicitly warned Adkins: "That status [not being an investigation target] can change at any time." DE #149-1. Adkins expressed his understanding. *Id.* The AUSA continued: "But you know that being told that you're not a target today doesn't mean that you'll never be one." *Id.* Adkins again agreed. *Id.* Clearly, in the circumstances, no express ratification of any possible immunity grant occurred because the prosecutor

---

[8] Adkins presents no proof indicating that the agents had specifically received actual or held apparent authority to make Adkins a promise not to prosecute. *See Streebing*, 987 F.2d at 373 ("[T]he record is devoid of any evidence establishing that FBI agent Sieger was authorized to make promises[.]"); *cf. Peavy v. United States*, 31 F.3d 1341, 1347 (6th Cir. 1994) (requiring the district court to "determine whether the FBI agents made promises to Peavy" regarding a plea agreement and "whether the agents had the apparent authority to make the disputed promises on behalf of the government"). At most, Defendant speculates, with no proof, that the agents here were "acting on behalf of" AUSA Choi, who "possibly directed [them] to complete service." DE #132-1, at 2. This naked and unsupported assertion is clearly insufficient to establish that the agents had actual or apparent authority to offer Adkins an immunity agreement; it does not speak empirically to any possible authority grant whatsoever.

7

explicitly warned Adkins that "being told that you're not a target today doesn't mean that you'll never be one."[9] That colloquy reflects an unequivocal statement to Adkins, at the time of testimony, that he is **affirmatively *not* immune** from prosecution and, in fact, may become an investigation target in the future. This is not immunity agreement ratification.

Moreover, even quite generously supposing Adkins established the existence of a pocket immunity agreement with S.D. W. Va. prosecutor ratification, such an agreement typically would bind *only* the Southern District of West Virginia, *not* the Eastern District of Kentucky or the national Department of Justice. Promises of pocket immunity, as the Court has discussed, "are contractual in nature and *do not bind other parties not privy to the original agreement*." *Turner*, 936 F.2d at 223 (emphasis added) (immunity grant in S.D. Fla. did not prohibit prosecution in E.D. Mich.); *Orlando*, 281 F.3d at 594 (same principle); *see also, e.g.*, *United States v. Peister*, 631 F.2d 658, 662-63 (10th Cir. 1980) (cited in *Turner*) (favorably repeating the district court's conclusion that informal immunity "was not binding on the court or on the United States government," instead only "on the United States Attorney's Office for the District of Colorado"); *United States*

---

[9] "[R]atification can be implied only when the ratifying official knows of the agreement, fails to repudiate it in a timely manner, and accepts benefits under it." *Flemmi*, 225 F.3d at 90. Adkins offers nothing (at least other than pure speculation) to indicate that implied ratification is at issue here—specifically, nothing regarding any "ratifying official" who "kn[e]w[] of the agreement" and yet failed to timely repudiate it and accepted benefits under it. Adkins asserts that it "is reasonable to infer" that the Southern District of West Virginia's United States Attorney's Office received "constructive notice" of the agents' statements "mainly because he was not indicted" there. DE #132-1, at 4-5. The Court views this as nonsensical and baseless; Defendant offers no explanation of the origin of this fanciful "constructive notice," and *numerous* possible reasons could undergird the S.D. W. Va. grand jury's decision not to indict. Adkins makes no suggestion that McGill and / or Morton informed *anyone* of the statements they actually made to Adkins. Further, the West Virginia District indicted no one in this matter, thus logically eliminating non-indictment as suggestive of immunity.

8

*v. Brothers*, 856 F. Supp. 380, 384 (M.D. Tenn. 1993) (holding that a pocket immunity agreement was "valid in the Northern District of Florida" but that it could not "prevent prosecution by other government agencies").

A contrary rule would be counter to the fundamental premise of pocket immunity, the authority for which stems from each prosecutor's "sole discretion *in his particular district* with respect to the decision to prosecute." *Turner*, 936 F.2d at 224 (emphasis added). This informal, contract-like process binds only the specific prosecutor's office involved, in stark contrast to the formal statutory immunity process. *See, e.g.*, 18 U.S.C. § 6003(b) (requiring approval of a high-level DOJ official). The Fifth Circuit is clear: "*Irrespective of* the language that limits the agreement to the Western District of Texas, *the informal immunity agreement could not have been binding beyond the jurisdiction of the U.S. Attorney for the Western District of Texas, the signatory to the agreement*. Under settled precedent, *one federal prosecutor cannot bind his or her counterpart in another district unless he or she has been given the authority*." *United States v. Ramos*, 537 F.3d 439, 454 (5th Cir. 2008) (internal quotation marks removed; emphases added); *see also In re Corrugated Container Antitrust Litig.*, 662 F.2d 875, 888 (D.C. Cir. 1981) (finding "no authority for ruling that oral promises of immunity by an investigator, not in accord with statutory requirements, bind all federal . . . prosecutors").

The only case Adkins cites on the topic, *United States v. Carter*, 454 F.2d 426 (4th Cir. 1972) (*en banc*), is easily distinguishable. There, negotiating counsel swore that the agreement at issue consisted of a promise "that *defendant would not be prosecuted anywhere else* for anything having to do with the stolen checks." *Id.* at 427. Adkins claims no such expansive assurance; *Carter*'s explicit language concerning a nationwide

9

promise not to prosecute has no analog here. Again, law enforcement's "performance of its investigatory duties is meant to complement, not curb, the United States Attorneys' performance of the prosecutorial function," *Flemmi*, 225 F.3d at 86-88, and the Court perceives no basis, at least in the absence of clear language, such as in *Carter*, even to explore whether the promise of one agent could affect charging decisions in other federal districts. Pocket immunity agreements, matters governed by contract law, bind only the parties in privity (here, in the contrafactual hypothetical, Adkins and the Southern District of West Virginia), and Adkins points to no authority from the E.D. Ky. prosecutor to bind this District. *Turner*, 936 F.2d at 224; *Ramos*, 537 F.3d at 454.[10]

Finally, Adkins makes an "alternative" suggestion: that "if . . . the Court cannot resolve a possible factual dispute, then [he] moves the Court to allow him to present the immunity defense at trial, so the [j]ury may decide whether or not [he] was immune from prosecution." DE #132, at 2. Given the Court's recommended resolution (which assumes all facts Adkins asserted are true), the Court views the request as lapsed. *See id.* (predicating the request on the possibility that ("if") the Court is unable to resolve the facts). Regardless, to the extent Adkins raises the issue as part of the motion to dismiss, determining authorization to grant immunity (along with addressing the accompanying ancillary questions) is "a pure question of law" for the Court. *Flemmi*, 225 F.3d at 84; *United States v. Bulger*, 816 F.3d 137, 146-51 (1st Cir. 2016) (holding, via extensive

---

[10]   Adkins's focus on the S.D. W. Va. grand jury investigating conduct that allegedly occurred in Kentucky is misplaced. *See* DE #132-1, at 5. The proper inquiry examines the possibly immunizing District, not the District where the underlying conduct allegedly happened.
   That the S.D. W. Va. agents were physically present in the E.D. Ky. at the time of the alleged promise adds a curious factual wrinkle, but Adkins cites no authority to support this fact changing or mattering to any result. The Court perceives that S.D. W. Va. agents serving a S.D. W. Va. subpoena as part of a S.D. W. Va. investigation could informally bind *only* (if any District) the S.D. W. Va. *See Turner*, 936 F.2d at 223-24.

analysis, that "the judge was right to take up the immunity issue pretrial" and that "immunity issue[s are] properly in the judge's hands"); *United States v. Brimberry*, 744 F.2d 580, 586 (7th Cir. 1984) ("Where a defendant contends that his or her prosecution is precluded by a grant of immunity, a motion to dismiss the indictment is the proper method of raising the issue."); *United States v. McDaniel*, 449 F.2d 832, 835 (8th Cir. 1971) (same principle); *United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) (holding that the district court "properly refused to give Dudden's proposed immunity instructions to the jury," which "asked the jury to find whether an informal agreement existed"—"The determination of the terms of an immunity agreement . . . is not for the jury to make after trial."); *United States v. Robertson*, 736 F.3d 1317, 1325 (11th Cir. 2013) (affirming the district court's pretrial denial of an immunity-based motion to dismiss); *cf. United States v. Gerant*, 995 F.2d 505, 510 (4th Cir. 1993) ("We hold that Appellant was not entitled to a jury determination of his breach of the non-prosecution agreement."). Therefore, in light of the merits resolution above, the Court recommends denying Defendant permission to raise the immunity matter as a defense to the jury. The question is for the Court, and this ruling disposes of it.

To summarize: Defendant's immunity argument fails because: (1) foundationally, no prosecutor or agent made a promise not to prosecute or any assurance of immunity; (2) even if an agent had so promised, agents generally lack authority to do so, and Adkins points to no specific grant of authority here; (3) even if an agent made an unauthorized promise, Adkins presents no evidence on any subsequent AUSA ratification; and (4) even if an agent made a promise that an AUSA subsequently ratified, such an agreement would bind only the Southern District of West Virginia, not the Eastern District of

Kentucky or national Department of Justice. Additionally, as discussed, the District Court should not allow Adkins to present this immunity defense to the jury.

*Conclusion*

For these reasons, the Court **RECOMMENDS** that the District Court **DENY** DE #132 to the extent it raises an immunity claim.

\* \* \* \* \*

The Court issues this recommendation under 28 U.S.C. § 636(b)(1)(B). The parties should consult 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. The objection period will be as stated in the Rule and statute, subject to any particular modifying schedule, if set by Judge Reeves. Failure to object in accordance with the Rule waives a party's right to review.

This the 27th day of March, 2017.

Signed By:
*Robert E. Wier*  /s/ REW
United States Magistrate Judge