UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 5:16-CR-22-DCR-REW |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| ALFRED BRADLEY ADKINS, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\*

Defendant Alfred Bradley Adkins, a clinical psychologist, faces an Indictment charging numerous counts, centering on an alleged 8-year Social Security fraud scheme involving thousands of claims and $600 million in alleged losses. *See* DE #1 (Indictment).

As pertinent, Adkins moved to dismiss the charges against him (Counts 1, 2, 7 and 10) based on alleged failures to state offenses. DE #139 (Motion). The United States responded in opposition. DE #155 (Response). The matter is ripe for consideration. For the following reasons, the Court **RECOMMENDS** that the District Court **DENY** DE #139. The charges are legally sufficient, foreclosing the relief sought by Adkins.

*Legal Standard*

A defendant may move to dismiss an indictment based on an alleged "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment is sufficient" for purposes of this rule "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables

1

him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 94 S. Ct. 2887, 2907 (1974); *see also, e.g.*, *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (applying the *Hamling* test); *United States v. Chichy*, 1 F.3d 1501, 1504 n.3 (6th Cir. 1993) ("An indictment . . . is presumed sufficient if it tracks the statutory language, cites the elements of the crimes charged, and provides approximate dates and times."), *superseded on other grounds as recognized by United States v. Smith*, 196 F.3d 676, 681 (6th Cir. 1999) (regarding Guideline double counting).

A Rule 12(b)(3)(B)(v) motion is appropriate only "when it raises questions of law rather than fact." *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (approving Defendant making a Rule 12 motion that "raise[d] a purely legal question about whether the indictment stated an offense"); *see also, e.g.*, *Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962 (6th Cir. 1951) (holding a motion "claiming that [the indictment's] allegations are false and untrue" improper because "issues of fact" must "be tried by a jury"); *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992) (holding a Rule 12 motion inappropriate if it requires the court to "invade the province of the ultimate finder of fact").

"An indictment that is valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence. Therefore, a court cannot consider a factual challenge to an indictment purporting to show a defect consisting solely of insufficient evidence to prove a particular charge." *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) (citation removed). In this context, the Court "must view the Indictment's factual allegations as true, and must determine only whether the Indictment

2

is valid on its face." *Id.* (internal alterations and quotation marks removed) (ultimately relying on *Costello v. United States*, 76 S. Ct. 406, 408-09 (1956)); *see also United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (*en banc*) (stating that, in this context, a court must "accept the [Indictment's] factual allegations as true[] and construe those allegations in a practical sense with all of the necessary implications"). Defendant's burden in this context is, correspondingly, "a heavy" one. *United States v. Lamoureux*, 711 F.2d 745, 747 (6th Cir. 1983).

*Analysis*

Under the applicable standard, the Indictment as to Adkins sufficiently states offenses: it plainly "contains the elements of the offense[s] charged and fairly informs [Defendant] of the charge[s] against which he must defend" and "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense[s]." *Hamling*, 94 S. Ct. at 2907.

The lengthy Count 1 charges Adkins with conspiring to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. DE #1, at 10-17. Count 2[1] charges Defendant with committing mail fraud, in violation of § 1341, as to claimant E.C. *Id.* at 17-18. Count 7 alleges Adkins committed wire fraud, in violation of § 1343, as to claimant E.C. *Id.* at 18-19. Finally, Count 10 charges Defendant with making a false statement or representation of material fact to the SSA, in violation of 42 U.S.C. § 408(a)(3), as to claimant J.M.J. *Id.* at 22-23. The Indictment also contains a thorough and detailed "Background" section. *Id.* at 1-10; *see also* DE #163 (Order denying bills of particulars).

---

[1] Counts 2 and 7 include an aiding and abetting theory.

First, as to each Count, the Indictment "contains the elements of the offense charged and fairly informs [Adkins] of the charge against which he must defend." *Hamling*, 94 S. Ct. at 2907. Each Count of the Indictment as to Adkins "clearly track[s] the language of the statute and thus contain[s] the elements of the offense." *Anderson*, 605 F.3d at 411 (holding that "specific allegations . . . fairly inform[ing]" Defendant of the charges "satisf[y] the first prong of *Hamling*"); DE #1 (Indictment), at ¶¶ 34-41, 46-47 (tracking the language of each statute at issue and fairly informing Defendant of the charges against which he must defend); *compare* DE #1, at ¶¶ 34-37, *with* 18 U.S.C. §§ 1341, 1343, and 1349 (tracking the statutory language); *compare* DE #1, at ¶¶ 38-39, *with* § 1341 (same); *compare* DE #1, at ¶¶ 40-41, *with* § 1343 (same); *compare* DE #1, at 46-47, *with* 42 U.S.C. § 408(a)(3) (same).

Second, as to the specifics of each Count, the Indictment "enables [Adkins] to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 94 S. Ct. at 2907. Adkins's Indictment "include[s] the relevant time period and the specific event[s] that triggered the charge against" him; this enables him "to adequately plead an acquittal or conviction in bar of any future prosecutions arising from the same offense," satisfying the "second requirement of *Hamling*." *Anderson*, 605 F.3d at 411; DE #1 (Indictment), at ¶¶ 34-41, 46-47 (listing the relevant time periods and specific events undergirding each charge, including incorporating, as relevant, the lengthy Background section).

The Indictment, thus, wholly satisfies *Hamling*, an independently sufficient basis for the District Court to deny DE #139. However, although Defendant fatally chooses to altogether ignore and never discuss the analysis of or cite *Hamling* (the central Supreme

4

Court case concerning the defensive theory), *see Anderson*, 605 F.3d at 411 (holding *Hamling* satisfied when the defendant, as here, "does not dispute that the *Hamling* test is satisfied"), Adkins raises a host of other arguments; none of those has merit. For completeness, the Court addresses each.

*First*—Adkins argues that "the Indictment fails to properly allege [that he] had the requisite intent to commit [the] crimes." DE #139, at 1. The Court treats Adkins's memorandum as further addressing this argument at DE #139-1, at 4-5. The Court will not unduly linger on this contention; a cursory review of the Indictment proves Defendant wrong. *See* DE #1 (Indictment), at ¶¶ 35(a)-(b) (alleging that Adkins conspired to "knowingly and with the intent to defraud" violate §§ 1341 and 1343); *id.* at ¶ 39 (alleging that Adkins violated § 1341 "knowingly" and "for the purpose of executing the above-described scheme to defraud"); *id.* at ¶ 41 (alleging that Adkins violated § 1343 "knowingly" and "for the purpose of executing the above-described scheme to defraud"); *id.* at ¶ 47 (alleging that Adkins violated § 408(a)(3) "knowingly and willfully"). The Indictment properly alleges Adkins's intent as to each crime; the District Court should reject Defendant's contrary, groundless argument.[2]

---

[2] To the extent Defendant argues that the Court "should not . . . burden[]" the jury "with an impossible task of reading minds," DE #139-1, at 6, the theory is unsuccessful. "Because intent . . . is difficult to prove by direct evidence, a jury may consider circumstantial evidence of . . . intent and draw reasonable inferences therefrom." *United States v. Boring*, 557 F.3d 707, 711 (6th Cir. 2009). The jury, indeed, will not likely be composed of mind readers, but Adkins's intent will be a question for that body to decide after presentation of proof at trial. *See, e.g.*, *United States v. Turano*, 802 F.2d 10, 11 (1st Cir. 1986) ("The jury cannot read the defendant's mind. They must use whatever evidence they can to determine what he believed.").

*Second*—Adkins, a clinical psychologist, argues (seemingly regarding the 42 U.S.C. § 408(a)(3)[3] charge, although he never states that explicitly—the closest statement the Court sees is an attack on "false statements prosecutions," DE #139-1, at 5, which indicates § 408(a)(3))[4] that because "a psychological evaluation is only an opinion and not a fact, it is not subject to the fraudulent or misrepresentation standards[.]" DE #139, at 2. "Psychological opinions," Adkins confidently asserts, are not facts "capable of being . . . fraudulent misrepresentation[s]." *Id.*; *see also* DE #139-1, at 6-7. The United States disputes the premise of Defendant's framing, *see* DE #155, at 23, but the issue earns Adkins no relief, even processing it on his chosen terms.[5]

This remarkable theory—that § 408(a)(3) effectively contains an unwritten psychologist exception—fails. "[A]n opinion . . . carries with it an implied assertion, not

---

[3] For one example of the Sixth Circuit's treatment of 42 U.S.C. § 408(a)(3), *see United States v. Bennett*, 112 F. App'x 375 (6th Cir. 2004) (reversing the district court's grant of the defendant's post-verdict Rule 29 motion for acquittal); *see also, e.g.*, *United States v. Adair*, 861 F.2d 722, 1988 WL 114791, at *5 n.6 (6th Cir. Oct. 31, 1988) (table) (holding, though without extensive analysis, "that section 408(c) [the precursor to § 408(a)(3)] does not include the element of specific intent to make a false representation given the omission of any statutory language regard[i]ng intent" and recognizing the conflict this created with Eighth Circuit law); *United States v. Cacioppo*, 517 F.2d 22, 23-24 (8th Cir. 1975) (*per curiam*) (affirming a doctor of osteopathy's convictions under then-§ 408(c) based on nonexistent "office and nursing home visits for which [he] sought compensation").

[4] The same general analysis applies even if Defendant intended this argument to also apply to the mail and wire fraud charges. *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 310-11 (6th Cir. 2010) (enumerating elements of mail fraud, including the broad phrase "a scheme or artifice to defraud," which "escapes precise definition" and includes "any plan or course of action by which someone intends to deprive another by deception of money or property by means of false or fraudulent pretenses, representations, or promises" (internal alteration removed)); *United States v. Faulkenberry*, 614 F.3d 573, 580-81 (6th Cir. 2010) (same phrasing as to wire fraud). Further, a party waives an issue when, as here, he inadequately briefs it. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *United States v. Phibbs*, 999 F.2d 1053, 1080 n.12 (6th Cir. 1993) ("[I]t is not [the Court's] function to craft a[ party's] arguments[.]").

[5] The Court bears in mind and notes here that the gist of the Indictment's charges is that Adkins *did not* offer his opinions; rather, the charges hinge on the core allegation that he, in fact, abdicated that professional role.

only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999). The Supreme Court has recognized the same principle, finding it "especially" true when the communicator (as Adkins did here) "holds himself out or is understood as having special knowledge of the matter[.]" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1330 (2015); *see also, e.g.*, *Aloe Vera of Am., Inc. v. United States*, 699 F.3d 1153, 1164 (9th Cir. 2012) ("[E]ven an estimate can be objectively false if, for example, the communicator knows it *cannot* be true." (emphasis in original)); *United States ex rel. Loughren v. Unum Grp.*, 613 F.3d 300, 310 (1st Cir. 2010) ("An opinion may qualify as a false statement[.]" (citing cases)); *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000) (stating than an "opinion can qualify as a false statement"); *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 394 (7th Cir. 1988) (recognizing the *Harrison* principle and adding, "the general rule is that it is not the form of the statement which is important or controlling, but the sense in which it is reasonably understood." (internal quotation marks removed)); *United States v. United Techs. Corp.*, 255 F. Supp. 2d 779, 782 (S.D. Ohio 2003) (rejecting argument that it would be "impossible for the Government to prove that Pratt's certified 'Best Estimates' were false" because the Government claimed "that Pratt knew of no facts to substantiate its 'best estimate' and that it actually knew of facts that would preclude such an opinion"); *cf. Moldea v. New York Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) (in defamation context, stating, "statements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false"). Especially in this pretrial, motion to dismiss context,

7

Adkins has not demonstrated that a psychologist's opinion can legally *never* constitute a false or fraudulent assertion or representation.[6]

"Congress explicitly made it a crime to conceal material facts from, or make false representations, to [the] SSA." *United States v. Henderson*, 416 F.3d 686, 691 (8th Cir. 2005).[7] That is just what the grand jury charged Defendant with doing—he allegedly "made and caused to be made false representations on a 'Medical Assessment of Ability to Do Work-Related Activities (Mental)' form indicating that the reported functional abilities of Claimant J.M.J. were genuine assessments made by **ADKINS** based on his examination, when they were not genuine assessments nor were the reported assessments

---

[6] Obviously, whether Adkins's conduct actually satisfies this element will be an issue for trial.

[7] This is the critical factor distinguishing *United States v. Kurlemann*, 736 F.3d 439 (6th Cir. 2013), which Adkins cites. *Kurlemann* dealt with an entirely different statute—18 U.S.C. § 1014—which, via its criminalization of knowingly making a "false statement or report," did not prohibit "material omissions" or "concealments." 736 F.3d at 445; *see also United States v. Waechter*, 771 F.2d 974, 978 (6th Cir. 1985) (cited by Adkins) (reflecting the same limitation—18 U.S.C. § 1010 only prohibited a person making a "statement, knowing the same to be false"). Section 408(a)(3), on the other hand, further criminalizes any false "representation" of a material fact. *Cf. Kurlemann*, 736 F.3d at 448 (countenancing that, if Congress "extend[ed]" a statute to "material omissions, implied misrepresentations or fraud," the result would be different). Even confronting *Kurlemann* and *Waechter* on their terms, cases (as cited above) contemplate that an opinion, in this context, can carry underlying or implied factual assertions, bringing it, in an appropriate circumstance, within *Kurlemann* / *Waechter*'s purview. *Waechter*, in fact, explicitly contemplates implied factual assertions. *See* 771 F.2d at 978-79 (A "factual assertion may be either express or implied."). Further, Adkins does not grapple with the legal significance (though he disputes the factual accuracy) of the charge that he falsely asserted that he based certain evaluations on genuine claimant assessments, when in fact he did not. Such a false claim, if proven at trial, would easily satisfy *Kurlemann*'s "factual assertion capable of confirmation or contradiction" dichotomy; either Adkins based an evaluation on a genuine claimant assessment, or he did not, regardless of his underlying psychological opinion.

Additionally, Defendant's effort to "somewhat analogize[]" to *United States v. Castro*, 704 F.3d 125 (3d Cir. 2013), is unconvincing; there, the court held, unsurprisingly, that "when a statement is literally true, it is, by definition, not false[.]" *Id.* at 139. Adkins, here, of course, makes exactly the opposite argument—that he *opined* on matters, not that he made literally true statements.

8

made by **ADKINS**." DE #1, at ¶ 47. Accordingly, Adkins's attempted legal defense that he "cannot be prosecuted for a professional opinion" because psychological opinions "are not facts capable of being proved or disproved," *see* DE #139-1, at 6-7, is baseless. An opinion, per the applicable cases' explanations and analyses, can qualify as fraudulent or false. If Adkins signed RFCs or medical assessment forms indicating that the representations therein were his genuine assessments from actual examinations, when in fact (as the Indictment charges) the representations were not genuine assessments so made by him, Adkins concealed material facts from, or made false representations to, the SSA—a criminal act. *See* 42 U.S.C. § 408(a)(3);[8] *see also, e.g.*, *United States v. Phythian*, 529 F.3d 807, 812-13 (8th Cir. 2008) (affirming a § 408(a)(3) conviction when a claimant "falsely stat[ed] . . . that she was unable to work"); *United States v. Youngblood*, 263 F. App'x 829, 832 (11th Cir. 2008) (affirming conviction for aiding and abetting making false statements to the SSA based on Ms. Youngblood's "statements regarding [her husband's] inability to engage in substantial gainful activity" made after an "interview[] with a clinical psychologist"). Falsely representing medical conditions to the SSA, divorced from actual professional evaluation, or falsely representing the occurrence of a genuine assessment to the SSA, is criminal. The District Court should reject Adkins's contrary argument and decline to dismiss the Indictment.

---

[8] The materiality test generally centers on whether the "concealments or misrepresentations . . . had a natural tendency to influence the decisions of the [applicable decision-making body.]" *Kungys v. United States*, 108 S. Ct. 1537, 1546-47 (1988). Here, Adkins's alleged concealments or misrepresentations, as to medical opinion, undeniably would have "a natural tendency to influence" the SSA's decision as to any individual claimant; indeed, the evidence received from Adkins, as a psychologist, would surely feature centrally in any given psychiatric disability assessment. *Cf. United States v. Klinefelter*, 38 F. Supp. 3d 965, 986 (C.D. Ill. 2014).

*Third*—Adkins asserts that "there [are] no factual allegations contained in the Indictment that [he] ever intended to enter into a conspiratorial agreement to commit a fraud, or to use the mail or wire transfers." DE #139, at 2; *see also* DE #139-1, at 3-4 (fleshing out this argument).[9]

The record indisputably contradicts this contention. The Indictment plainly charges, with plenteous factual allegations, that Adkins "conspired and agreed" with Conn, Daugherty, and "other persons, both known and unknown to the Grand Jury," to violate §§ 1341 and 1343. DE #1, at ¶¶ 34-35. The grand jury specifically set out the purpose of the conspiracy—"to deprive the SSA of money and property, and [as to the Defendants] to unlawfully enrich themselves and others" by, for example, "submitting and causing the submission of false and fraudulent medical documentation to the SSA." *Id.* at ¶ 36. The Indictment alleges that Adkins and two unindicted co-conspirators, at Conn's direction, "performed pretextual physical and mental evaluations on [c]laimants,

---

[9] The Government argues at length that Adkins's "reliance on disputed facts defeats the motion." *See* DE #155, at 13-20. The Court generally agrees and finds it sufficient to simply note that, for purposes of a motion to dismiss, the Court "accept[s] the [Indictment's] factual allegations as true[.]" *Reed*, 77 F.3d at 140 n.1. Most of Defendant's arguments, sprinkled throughout DE ##139 and 139-1, rest on disputing the Indictment's charges and "claiming that [the Indictment's] allegations are false and untrue," an improper venture for a motion to dismiss. *Universal Milk*, 188 F.2d at 962. To excerpt just two, Adkins argues, counter to the Indictment's charges, "that he had no intent to commit mail fraud and wire fraud" and that he "interviewed each and every claimant." DE #139-1, at 3, 5. The overall thrust seems to be that Adkins was generally unaware of the SSA administrative process, personally saw all claimants, and was not aware that any RFC form he signed would be used outside Conn's office. *See id.* at 3-4. These arguments and claims may well be considered and vindicated at trial—but that is exactly the point; the issues of fact that Adkins documents must "be tried by a jury." *Universal Milk*, 188 F.2d at 962; *Levin*, 973 F.2d at 467 (holding a court may not "invade the province of the ultimate finder of fact" in deciding a motion to dismiss). Finally, the Court sees no significance to the one "area" where Defendant says the "facts of discovery are wholly undisputed." DE #139-1, at 4. The United States disagreed with the characterization, DE #155, at 15-16, and the allegedly "undisputed" facts counter the Indictment's allegations.

and routinely prepared and signed evaluation reports indicating that [c]laimants had limitations considered disabling by the SSA, irrespective of [c]laimants' actual physical or mental conditions." *Id.* at ¶ 37(e). Conn allegedly paid Adkins between $300 and $450 per evaluation. *Id.* The grand jury charged that Conn pre-completed fraudulent RFCs and "provide[d] the same to medical professionals, including **ADKINS**," who "signed them without amendment and returned them to **CONN** for submission to the SSA." *Id.* at ¶ 37(f). Adkins allegedly would, within the "scheme," sign pre-completed RFCs, "purporting that [he himself] prepared the RFCs based on [his] examinations of the [c]laimants and attesting to the RFCs' accuracy." *Id.* at ¶ 37(i); *see also id.* at ¶ 37(s) (summarizing the conspiracy).[10]

The grand jury further charged that Adkins, aiding and abetting Conn, knowingly and for the purpose of executing the scheme, violated § 1341 by causing "United States Treasury [c]hecks to be sent or delivered by any private or commercial interstate carrier, specifically, the United States Postal Service, and took and received therefrom United

---

[10] Indeed, as the United States argues, in a conspiracy case, "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992). "The elements of conspiracy are (1) an object to be accomplished. (2) A plan or scheme embodying the means to accomplish that object. (3) An agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means." *United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006) (internal quotation marks and alteration removed). The agreement "need not be express or formal. A tacit or mutual understanding among the parties is sufficient. But the evidence must nevertheless demonstrate that the defendant had knowledge of the conspiracy's object and consciously committed himself to the furtherance of that object. However, once the existence [of] a conspiracy is shown, the evidence linking an individual defendant to that conspiracy need only be slight." *Id.* at 233 (internal quotation marks and citations removed). The Indictment as to Adkins more than adequately charges a conspiracy under the applicable standards. The factual evaluation and sorting is for trial.

States Treasury [c]hecks for the purpose of executing such scheme[.]" DE #1, at ¶ 39.[11] Specifically, the Indictment charges that Adkins violated § 1341 regarding an approximately June 1, 2011, USPS mailing concerning claimant E.C. of Treasury check 98505980 in the amount of $5,917.00 from Philadelphia, Pennsylvania, to Floyd County, Kentucky. *Id.*

Finally, the Indictment alleges Adkins, aiding and abetting Conn, knowingly and for the purpose of executing the scheme, violated § 1343 by "transmit[ting] and caus[ing] to be transmitted by means of wire communications in interstate commerce . . . pre-completed RFCs[] between Floyd County, Kentucky, and Woodlawn, Maryland[.]" DE #1, at ¶ 41.[12] Specifically, the Indictment connects Adkins's conduct to an approximately April 11, 2011, submission of a "[d]ocument bearing identification number A1001001A11D11B24355C28096" regarding claimant E.C. *Id.*

Per this discussion, the Indictment obviously, contrary to Adkins's assertions, contains sufficient "factual allegations" that Defendant "intended to enter into a

---

[11] "A defendant may commit mail fraud even if he personally has not used the mails. A mail fraud conviction requires only a showing that the defendant acted with knowledge that use of the mails would follow in the ordinary course of business, or that a reasonable person would have foreseen use of the mails. Accordingly, the government does not have to show that the defendant actually intended to cause the mails to be used." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) (citation removed); *see also Schmuck v. United States*, 109 S. Ct. 1443, 1448 (1989) ("[T]he use of the mails need not be an essential element of the scheme.").

[12] Similarly as with mail fraud, a defendant charged with wire fraud "does not have to directly or personally perform the wire communication; it is sufficient that it is foreseeable that a wire communication could be used to advance the scheme to defraud." *United States v. Prince*, 214 F.3d 740, 748 n.4 (6th Cir. 2000). Further, the Sixth Circuit has upheld a wire fraud conviction based on "[s]ubstantial and competent evidence . . . that, at the very least, [the defendant] aided in the commission of wire fraud[.]" *Prince*, 214 F.3d at 765. The grand jury also charged Adkins with just that—aiding and abetting wire fraud.

conspiratorial agreement to commit a fraud" and committed mail and wire fraud.[13] Adkins disputes the grand jury's factual allegations, but the proper venue for such quarrels is trial, not a pretrial motion to dismiss. The District Court should reject Adkins's arguments and not dismiss the Indictment.

*Conclusion*

For these reasons, the Court **RECOMMENDS** that the District Court **DENY** DE #139.

\* \* \* \* \*

The Court issues this recommendation under 28 U.S.C. § 636(b)(1)(B). The parties should consult 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b) for specific appeal rights and mechanics. The objection period will be as stated in the Rule and statute, subject to any particular modifying schedule, if set by Judge Reeves. Failure to object in accordance with the Rule waives a party's right to review.

This 30th day of March, 2017.



Signed By:
Robert E. Wier
United States Magistrate Judge

---

[13] To the extent that "good faith is a complete defense to the charges of mail and wire fraud, [Adkins] must provide evidentiary support for a good faith defense in order to obtain a good faith jury instruction." *United States v. Ash*, 117 F.3d 1421, No. 96-3097, 1997 WL 382039, at \*4 (6th Cir. July 9, 1997) (table). Further, this is a potential trial defense, based on the jury's evaluation of competing proof, not a basis to dismiss the Indictment. *See also, e.g.*, *United States v. Stephens-Miller*, 582 F. App'x 626, 639 (6th Cir. 2014).