UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 16-022-DCR-3 |
| | ) | |
| V. | ) | |
| | ) | |
| ALFRED BRADLEY ADKINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant Alfred Bradley Adkins's *in limine* motion to exclude from trial any evidence pertaining to the redetermination of claimant benefits that resulted in termination. [Record No. 140] The parties presented arguments on the motion during the pre-trial conference held on May 22, 2017.¹ [*See* Record No. 216] For the reasons that follow, the defendant's motion will be denied.

## I. Defendant's Motion

The defendant's first motion *in limine*² seeks to prevent the government from using, at any stage of trial, "any results, findings or conclusions and any evidence relating to the re-determination hearings involving former clients of the Conn Law Firm, where Claimants have

---

¹ The Court will also address the United States' *in limine* motion to exclude out-of-court "self-serving" statements made by the defendant. [Record No. 213] This motion, along with a second motion filed by the United States [Record No. 214], was sustained during the May 22, 2017, hearing. [*See* Record No. 216] The Court takes this opportunity to provide further guidance regarding the issues presented.

² The defendant's second *in limine* motion was previously disposed of in a separate Memorandum Order. [Record No. 212] The Court also will address this motion.

-1-

had their eligibility benefits revoked or terminated." [Record No. 140 at 1] The motion speaks only of benefits *terminations*. It does not address the admissibility of evidence pertaining to the redetermination process for claimants who retained their previously-awarded benefits.

      **a.    The Redetermination Process**

Under the Social Security Act, the Commissioner is required to redetermine an individual's entitlement to benefits any time if there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. §§ 405(u)(1)(A) and 1383(e)(7)(A)(i). The Commissioner is required as part of this redetermination process to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. §§ 405(u)(1)(B) and 1383(e)(7)(A)(ii). The Social Security Administration reconsidered approximately 1,765 claimant files related to this criminal action. [Record No. 156 at 3] The United States contends that it is has produced to defendant approximately 547 redetermination decisions that resulted in benefit terminations, and the process is ongoing. [Record No. 156 at 5]

More specifically relevant here, the United States identified 216 claimant files that included purported pre-completed RFC forms signed by Defendant Adkins. [Record No. 156 at 7-8] Of those 216 files, 88 claimants had their benefits terminated during the redetermination process and 128 maintained their previously-awarded benefits. [Record No. 156 at 7-8, 10]

      **b.    Adkins's Position**

Defendant Adkins provides three separate grounds for the *in limine* ruling sought. First, he argues that, under Federal Rule of Evidence 401,[3] evidence of benefits termination "has no value" and "is irrelevant." [Record No. 140 at 1] Second, he contends that, under Rule 403, such evidence would be "unfair" and "substantially prejudicial." [*Id.*] Third, Adkins suggests that, because he was not a party to the redetermination proceedings, introduction of this evidence will violate his confrontation clause and due process rights. [Record No. 140-1 at 2]

Adkins does not extrapolate on his relevance argument. Instead, he focuses his discussion on Rule 403's factors. He states that, even if the redetermination decisions do not specifically discuss or address a fraud allegation, "the nexus of the issues are so closely related [that] the jury will be confused, and will presume [that] the Claimants were not initially entitled to those benefits *except that a fraud must have occurred*." [Record No. 140-1 at 2 (emphasis added)] Adkins suggests that the jury is likely to confuse the denial of benefits following a redetermination hearing with a judicial finding of fraud. He argues this confusion will "creat[e] a presumption and switch[] the burden of proof." [Record No. 140 at 1] Adkins also claims that it will "add confusion and delay" if he "must tackle each one of those re-determinations to ascertain what part or effect on causation his evaluations had, or the absence thereof, played in those Claimants losing their eligibility." [Record No. 140-1 at 2] "In essence, the trial of this action would be inundated with other mini trials, so the *negative* re-determinations must be excluded." [*Id.* (emphasis added)]

Finally, Adkins points out that the standard of proof during a redetermination hearing is not the same as during a criminal trial. He suggests that the jury hearing evidence of claimant

---

[3] While Adkins does not specifically reference Rule 401, the Court interprets the relevance argument as such.

denials during redetermination will be "pre-dispose [] to believe a fraud has occurred." [Record No. 140 at 1] Moreover, because the defendant was not a party to the redetermination, and did not have the right to contest or otherwise challenge the evidence used or the exclusion of evidence at the redetermination proceedings, he argues that his "right of cross-examination of the witnesses, and due process would be violated." [Record No. 140-1 at 2] To preserve his right to a fair trial, Adkins wishes to exclude all evidence of redetermination hearings that resulted in revocation or termination of benefits.[4]

### c. Government's Response

The government intends to use the conclusions and findings of the redetermination hearings "to evidence the materiality of the Pre-completed Residual Functional Capacity forms [prepared by Conn, signed by Adkins, and submitted to the SSA] in the disability determination process." [Record No. 156 at 1-2] It contends that the results of the redetermination process are "highly probative to the offenses charged [because] materiality is an element of those offenses." [*Id.* at 2] The government argues that the probative value of this evidence is not substantially outweighed by any of the Rule 403 factors. [*Id.*]

The government identifies 216 of the redetermination hearings completed thus far as involving pre-completed RFCs signed by Adkins. [Record No. 156 at 4] To date,[5] approximately eighty-eight of those 216 claimants received unfavorable decisions. [*Id.*] With Adkins's pre-completed RFCs excluded, these claimants failed to re-establish (through other

---

[4] Again, the defendant does not discuss which, if any, of these same concerns apply to redetermination proceedings that resulted in benefits being maintained.

[5] According to the United States, this statistic is current as of January 7, 2017. [Record No. 156 at 4]

evidence in their original file and any new evidence they chose to submit) that they were disabled at the time of their initial award. [*Id.*] Taken together, these eighty-eight claimants received notices of overpayment totaling approximately $6.1 million. [*Id.*]

Put succinctly, the government argues that, "when the Pre-completed RFCs, together with evaluation reports were excluded, in eighty-eight out of 216 instances so far, the SSA reached a different outcome than previously rendered by Daugherty." [Record No. 156 at 8] "This fact, that different outcomes were reached between the initial decisions and the redeterminations when the Pre-completed RFCs were excluded, evidence the materiality of the Pre-completed RFCs in the decision making process." [*Id.*]

The government points to the Sixth Circuit pattern jury instructions for mail fraud and wire fraud, which have as an element that a scheme must include "a *material* representation or concealment of a *material* fact." [Record No. 156 at 9 (citing pattern instructions 10.01(1)(B), 10.02(1)(B))] The false statement charge also requires materiality. [*Id.* (quoting 42 U.S.C. § 408(a)(3) ("Whoever at any time makes or causes to be made any false statement or representation of a *material fact* for use in determining rights to payment under this subchapter . . . shall be guilty of a felony. . .") (emphasis added))] To be "material," a misrepresentation or concealment must have "a natural tendency to influence or [be] capable of influencing the decision of a person of ordinary prudence and comprehension." [*Id.* (citing pattern instructions 10.01(2)(D), 10.02(2)(D))]

According to the government, the fact of 88 claimants receiving different results when the Pre-completed RFCs were excluded is clear evidence of the RFCs' materiality. [Record No. 156 at 10] It argues that, although 128 claimants kept their benefits, this fact makes little difference because the claimants were able to submit new evidence to support their disability

-5-

claims. [*Id.*] The 88 changed results establishes the relevancy and admissibility of this evidence under Rules 401 and 402. [*Id.*]

The government offers little argument in responding the defendant's motion regarding the potential prejudice to the jury, or the potential for confusion of the issues or unwarranted delay. It that "[t]he prejudice Defendant argues he will suffer is substantially overstated." [Record No. 156 at 10] And because of the highly probative value of this evidence, the government submits that the potential prejudice does not outweigh it under Rule 403. [*Id.*] Regarding potential due process or confrontation clause issues, the government contends "as the Pre-completed RFCs and evaluation reports signed by Defendant did not play a role in the redeterminations, Defendant's appearance at those hearings would have been wholly inappropriate." [*Id.* at 8]

According to the government, the bottom line is that whether the claimants are or were actually entitled to benefits *is beside the point*. [Record No. 156 at 11] What matters is that the defendant signed forms attesting to claimants' debilitating conditions regardless of whether they actually had those conditions. [*Id.*] Because the forms were severe enough to necessarily entitle an individual to disability, they were effective. And without the forms, at least 88 claimants had their benefits terminated. Accordingly, the government wishes to use the results of the redetermination process to establish materiality, and nothing more. [*Id.* at 12]

### d. Arguments During the Pre-Trial Conference

The defendant restated his position during the May 22, 2017 pre-trial conference, with his "biggest" concern being that the jury will draw an improper inference from the termination of benefits being tied to the "excising" of Adkins's RFC forms from the claimant files.

However, if a limiting instruction could be crafted to shield the defendant from such an improper inference, counsel believed that the defendant "wouldn't have any problem."

The Court specifically expressed its own concerns to the parties, including that the jury may get an incomplete picture of the redetermination process (such as improperly concluding that the redetermination decisions are final), and that mini-trials may occur over the specifics of any particular case (which would tend to confuse the issues of redetermination and fraud).

The government acknowledged that it was sensitive to these concerns, and proposed a method of introducing this evidence to avoid these issues. Specifically, it proposed that the evidence would come in through a witness explaining the redetermination process in a high-level of generality, without mentioning the word "fraud." The government proposed that it would explain simply that Adkins's RFC forms were removed "for purposes of the process," and that when that occurred, 88 individuals had their decisions reversed, and the other 128 remained the same. The government believes that such a general explanation would be sufficient to establish materiality. The government acknowledged, however, that the defendant would then be free to argue against materiality by discussing the specifics of each case (including pointing to the claimants who maintained their benefits through the process).

e.  **Discussion**

"Evidence is relevant if it has 'any tendency' to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence." *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (quoting Fed. R. Evid. 401). This amounts to an "extremely liberal" standard. *Id.* (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). A counterbalance is provided by Rule 403. Even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusing the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Evidence is not excluded merely because it is damaging or prejudicial to a party; instead, it must be *unfairly* prejudicial. *See United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993). Evidence that is prejudicial only in the sense that it portrays a party in a negative light is not unfairly prejudicial for purposes of Rule 403. *United States v. Chambers,* 441 F.3d 438, 456 (6th Cir. 2006) (citing *United States v. Sanders,* 95 F.3d 449, 453 (6th Cir. 1996)). Rule 403 is not concerned with "the damage to [a party's] case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986).

Moreover, to warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially* outweigh its probative value. Fed. R. Evid. 403. The Sixth Circuit has found this requirement significant. District courts have "a broad range of discretion in deciding issues of admissibility under Rule 403," but "such discretion is not unlimited." *Koloda v. Gen. Motors Corp.,* 716 F.2d 373, 378 (6th Cir. 1983).

> This discretionary power does not, however, allow the Trial Court to exclude competent evidence which is essential and vital to a litigant's case unless there is a sound practicable reason for barring it. All must be looked to in terms of the purpose of the rule of exclusion, the interests to be served by admissibility and the qualifying instructions, if any, needed to eliminate the probability of harm.

*Id.* (quoting *Bailey v. Kawasaki-Kisen, K.K.,* 455 F.2d 392, 398 (5th Cir. 1972)).

In conducting this analysis, the court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006) (quoting *United States v. Zipkin*, 729 F.2d

384, 389 (6th Cir. 1984)). The court considers both the probative value of the evidence *and* the need for the evidence, which are together weighed against the "harm likely to result from its admission." *United States v. Stout*, 509 F.3d 796, 800 (6th Cir. 2007) (quoting Fed. R. Evid. 403 advisory committee's note). "[A] Court must consider the evidence 'against the background of all the evidence in the case.'" *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *2 (E.D. Tenn. Oct. 26, 2009) (quoting 22 Charles Alan Wright, Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5214 (1978)).

### i. Relevance and Probative Value

The Court maintains strong reservations about permitting into evidence the results of the redetermination process, termination and maintenance of benefits alike. As an initial matter, the results of the redetermination process, or the denials, are not final. *Compare Carter v. Colvin,* -- F. Supp. 3d --, Civ. A. No. 0:16-017-DCR, 2016 WL 6794790 (E.D. Ky. Nov. 15, 2016) (finding that Social Security disability claimants were not denied due process of law in redetermination proceedings); *Perkins v. Colvin,* -- F. Supp. 3d --, Civ. A. No. 7:16-350-JMH, 2016 WL 7332989 (E.D. Ky. Dec. 16, 2016) (same); *with Hicks v. Colvin*, -- F. Supp. 3d --, Civ. A. No. 7:16-154-ART, 2016 WL 5944715 (E.D. Ky. Oct. 12, 2016) (concluding that the redetermination process denied Social Security disability claimants due process of law). These matters are currently pending before the Sixth Circuit for resolution. *In re: John Lee Perkins, et al.* Nos. 17-501, 17-502 (6th Cir. May 24, 2017) (order granting interlocutory appeals pursuant to 28 U.S.C. § 1292(b)); *Amy Jo Hicks v. Comm'r Social Security*, *appeal docketed*, No. 17-5206 (6th Cir. Feb. 22, 2017).

Moreover, the results of the redetermination hearings (and whether these claimants are ultimately entitled to benefits), is not relevant to the ultimate issue in this case—Adkins's criminal liability. As the government points out, whether claimants are actually disabled is beside the point. The question in this case is whether Adkins conspired to defraud the Social Security Administration, and whether he did so by committing mail fraud, wire fraud, and submitting false statements. Despite the Court's reservations, the government has established (and the defendant does not dispute) that the redetermination denials are relevant to a narrow issue: materiality. Materiality is a fact of consequence in this action, and because 88 claimants were denied previously-awarded benefits when Adkins's RFC forms were removed from consideration, those denials have a tendency to make the materiality of the RFCs more probable. *Ayers*, 773 F.3d at 169. That is, the termination of benefits tends to show that the RFC forms had a natural tendency to influencing the decisionmaker.

Having met the Rule 401 standard for relevancy, the probative value must be considered, especially in light of the pending challenges to the redetermination process as a whole. The probative value is high, regardless of the constitutionality or propriety of the redetermination process, a question the Sixth Circuit will decide. The outcome of that litigation has no bearing on the propriety of this evidence being presented to the jury, or on its probative value. As currently crafted, the redetermination process removes the potentially fraudulent evidence. Whether the wholesale exclusion of Adkins's reports is constitutional, the fact is that without those reports, 88 claimants had their benefits terminated. Without Adkins reports, the claimants are left without sufficient evidence in their files to support

findings of disability.[6] Other questions about the fairness of the redetermination process (such as a claimant's ability to find new medical evidence) has no bearing on whether Adkins's reports were a material part of their original application. And the ability of claimants to submit new evidence at redetermination clouds the question of materiality, but only to the government's detriment.

### ii. Rule 403 Factors

The defendant suggests that the mere link of Adkins's RFCs being removed to the termination of benefits is enough to prejudice the jury. But prejudice alone is not enough to keep evidence out under Rule 403. It must be *unfairly* prejudicial, meaning, for example, that it would tend to "suggest a decision on an impermissible basis." *Bonds,* 12 F.3d at 567. To be sure, if the jury were told, though truthfully, that Adkins's RFC forms were removed because there was reason to believe fraud was involved, the jury could potentially confuse this *reason to believe* as a pre-existing finding of fraud. But the government has stated its intention to avoid such an explanation.

Absent an actual mention of fraud, whether the jury may draw an inference of fraud from the mere link between excising Adkins's RFC forms and the termination of benefits, such an inference would not amount to *unfair* prejudice.[7] Via the element of materiality, the

---

[6] The fact of termination does not necessarily indicate that the only meaningful evidence in a claimant's case files was Adkins's RFC form. This depends upon what other evidence was in the claimants' casefiles, and was since removed. For example, if there were RFC forms from other consultative examiners besides Adkins, Adkins's RFCs would not necessarily the linchpin evidence. But Adkins's RFCs need not be the linchpin to be material. And these such details will be fair game for the defense.

[7] It is possible that some of the 88 claimants may otherwise be entitled to benefits despite being denied benefits at their redetermination hearing. For example, a claimant may not have

-11-

terminations are prejudicial to Adkins, but appropriately so. *See Bonds,* 12 F.3d at 567; *Chambers*, 441 F.3d at 456. An appropriate limiting instruction, together with the defendant's ability to elicit clarifying information through cross-examination, will appropriately mitigate the possibility of unfair prejudice.

Apart from prejudice, permitting the government to introduce redetermination hearing results also raises concerns of undue delay and confusion of the issues. The defendant may, for example, attempt to provide evidence of the 128 claimants who maintained their benefits through the redetermination process. The defendant may show that for these claimants, there was sufficient evidence in their original claims files to support disability. Presenting such evidence could be helpful in explaining the process to the jury, and assisting it in evaluating materiality. However, it is possible that some of the 128 claimants alleged both a mental and a physical disability, and that the redetermination result was based on the physical disability. Extrapolation on the basis for the redetermination award will be required to know for certain, and such evidence may dilute the fact-finder's ability to determine what impact Adkins's RFC had in the initial award of benefits. Likewise, where the claimants provided new evidence, the government may have to explain to the jury how that new evidence has no bearing on the materiality of Adkins's original RFC forms. This level of detail for individual claims may cause undue delay and could confuse the jury.

But in ruling on a Rule 403 issue, the Court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Perry*, 438 F.3d at 648. The government asserts that the redetermination evidence is

---

adequately prosecuted their case during the redetermination hearing. The fact of the redetermination-termination does not mean that the claimant was never entitled to benefits.

very important to their case in explaining the overall materiality of Adkins's medical evaluations. Despite potential problems with the redetermination process itself, the probative value of the 88 unfavorable redeterminations decisions is clear. The potential for confusion of the issues can be mitigated by a limiting instruction, and the possibility for undue delay will be ultimately determined by the manner in which the plaintiff and defendant choose to proceed with their case, rather than necessarily resulting from permitting this evidence to be introduced. Accepting that the government will proceed as it has suggested, the court finds that the danger of unfair prejudice, confusion of the issues, undue delay, and other Rule 403 factors do not substantially outweigh the probative value of this evidence.

### iii. Due Process and Sixth Amendment Concerns

The defendant's final argument regarding due process and confrontation clause concerns warrant only limited discussion. As the government suggests, Adkins was not a party to the redetermination proceedings. Therefore, he had no right to be present or otherwise take part. The redetermination proceedings are adjudications of benefits-entitlements based, and the introduction of their result to establish that Adkins's medical evaluations were material in no way violates Adkins right to due process or confrontation of the witnesses against him. He will be provided with the opportunity to challenge this evidence at trial, and his constitutional rights will be accordingly preserved.

### f. Conclusion

Evidence of the redetermination hearings resulting in termination of benefits is relevant to the limited issue of materiality and, therefore, is admissible under Rule 402. Because the Court does not find that any of the Rule 403 factors outweigh the probative value of this

evidence, the defendant's motion will be denied. The parties are invited to propose a limiting instruction in advance of trial.

## II. Government's Motion

The United States moved *in limine* to exclude introduction of "self-serving" statements by the defendant; namely, hearsay statements made during grand jury testimony, statements made during testimony before the United States Senate, and statements made to law enforcement. [Record No. 213] The government argues that it may introduce such statements under Fed. R. Evid. 801(d)(2) as statement's against the defendant's interest, but the defendant is excluded from offering self-serving statements during the identified proceedings. Because the government's motion is a correct statement of the law, the motion was sustained on the record during the pre-trial conference. [Record No. 216] The Court takes this opportunity to provide supporting authority for its ruling on this point.

As an initial matter, Rule 801(d)(2) does not permit a party to admit his or her *own statements* through the testimony of other witnesses.

> Rule 801(d)(2), however, does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses. *See United States v. Wilkerson,* 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied,* 522 U.S. 934 (1997). Indeed, if such statements were deemed admissible under Rule 801(d)(2), parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury. *See United States v. Ortega,* 203 F.3d 675, 682 (9th Cir. 2000).

*United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Here, the matter concerns a possible attempt to admit the defendant's own statements by playing his past statements to the jury. If permitted, the defendant could avoid cross-examination by simply admitting into evidence his previously-recorded statements. But as the

Fourth Circuit acknowledged, "[t]here is no exception provided in the rules for a self-serving, exculpatory statement made by a party, which is sought for admission by that same party." *United States v. Beltre*, 188 F.3d 503, 1999 WL 638605 (4th Cir. 1999) (table).

Further, Rule 106 does not permit introduction of what is otherwise excluded as hearsay.

> Rule 106 is intended to eliminate the misleading impression created by taking a statement out of context. *The rule covers an order of proof problem; it is not designed to make something admissible that should be excluded.*

*United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (emphasis added). The Fourth Circuit has held likewise, quoting the Eighth Circuit:

> The rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party. *See* Fed. R. Evid. 803-804. Moreover, even if, as Wilkerson claims, Rule 106 had applied to this testimony, it would not render admissible the evidence which is otherwise inadmissible under the hearsay rules. *See United States v. Woolbright,* 831 F.2d 1390, 1395 (8th Cir. 1987) (neither Rule 106 or Rule 611 authorizes a court to admit unrelated hearsay when that hearsay does not fall within one of the exceptions to the hearsay rule). Consequently, because the exculpatory statement in question here was pure hearsay and no exception enumerated in the rules permit its introduction, the trial judge did not abuse his discretion in prohibiting its admission.

*United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996). As the Sixth Circuit more recently explained:

> Completeness, a common-law doctrine, does not outweigh the hearsay rules, because "[h]earsay is not admissible except as provided by these rules or other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 802 (emphasis added). Exculpatory hearsay may not come in solely on the basis of completeness.

*United States v. Shaver*, 89 F. App'x 529, 533 (6th Cir. 2004) (citing *United States v. Guevara,* 277 F.3d 111, 127 (2d Cir. 2001), modified in non-relevant part, 298 F.3d 124 (2d Cir. 2002);

*Wilkerson*, 84 F.3d at 696. *Cotsner*, the Sixth Circuit's key case in this regard, remains good law. *See United States v. Kerley*, 784 F.3d 327, 342 (6th Cir. 2015) (applying *Costner*), *cert. denied,* 136 S. Ct. 350 (2015); *United States v. Miller*, 562 F. App'x 272, 291 (6th Cir. 2014) (same).

The test for admissibility under Rule 106 is as follows: "(1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will insure a fair and impartial understanding of all of the evidence." *United States v. McAllister,* 693 F.3d 572, 584 (6th Cir. 2012) (citing *United States v. Glover,* 101 F.3d 1183, 1190 (7th Cir. 1996)).

### III.  Expert Disclosure

The Court takes this opportunity to address an additional issue raised in the briefing regarding the motions *in limine*. The Court previously denied defendant Adkins's second *in limine* motion [Record No. 174], which sought to exclude any lay testimony regarding the propriety of the defendant's mental evaluations. [Record No. 212] That motion was premised on the United States' "[choosing] not to list any mental health experts, such as psychologists or psychiatrists." [Record No. 174 at 1] In addition to refuting the notion that lay testimony could not be offered regarding the defendant's mental health evaluations, the United States contravened the suggestion that it failed to disclose a mental health expert. [Record No. 180 at 8, 17-18] Specifically, the United States claims that it provided the defendant with an investigative report detailing the prospective testimony of Timothy Carbury, Ph.D., a clinical psychologist, on July 25, 2016, together with his *curriculum vitae*. [*Id.* at 4, 8] The government contends that this disclosure complies with the Rule 16(a)(1)(G) requirement of

providing a written summary that describes "the witness's opinions, the bases and reasons for those opinions, and the witness's qualification." [*Id.* at 18 n.3 (quoting Fed. R. Crim. P. 16(a)(1)(G))]

The Pre-trial Scheduling Order entered on September 28, 2016, provides, "[t]he United States shall make compliant Rule 16(a)(1)(G) disclosures by March 1, 2017. [Record No. 109] Neither the Scheduling Order not Rule 16 requires that such disclosures be filed in the record. Further, to the extent Rule 16 requires specific notice of testimony the United States *intends* to use under Rules 702, 703, and 705, (rather than notice of *potential* use) the defendant has been provided such specific notice as of March 29, 2017, the date of filing its response to the motion *in limine*, that the United States intends to call Dr. Carbury. Therefore, should the defendant move to exclude Dr. Carbury's testimony, the Court is not inclined to grant such a motion based solely upon the United States' failure to list him in its March 1, 2017, disclosure [Record No. 164].

### IV. Conclusion

Being sufficiently advised, it is hereby

**ORDERED** that Defendant Adkins's First Motion *in limine* [Record No. 140] is **DENIED**.

This 30th day of May, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge