```
 1                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
 2                         CENTRAL DIVISION
                        LEXINGTON, KENTUCKY
 3
    UNITED STATES OF AMERICA,      ) Lexington Criminal
 4                                 ) Action No. 16-22
          Plaintiff,               )
 5                                 ) At Lexington, Kentucky
    -vs-                           )
 6                                 ) May 22, 2017
    ALFRED BRADLEY ADKINS,         ) 1:30 p.m.
 7                                 )
          Defendant.               )
 8

 9

10     TRANSCRIPT OF PRETRIAL CONFERENCE HEARING PROCEEDINGS
             BEFORE THE HONORABLE DANNY C. REEVES
11                UNITED STATES DISTRICT JUDGE

12

13  Appearances of Counsel:

14  On behalf of Plaintiff:        DUSTIN M. DAVIS, ESQ.
                                   ELIZABETH G. WRIGHT, ESQ.
15                                 U.S. Department of Justice
                                   Assistant U.S. Attorney
16                                 1400 New York Avenue, NW
                                   Washington, DC 20005
17
    On behalf of Defendant:        JONAH LEE STEVENS, ESQ.
18                                 Hamilton & Stevens PLLC
                                   117 Caroline Avenue
19                                 P.O. Box 1286
                                   Pikeville, Kentucky  41502
20
    Court Reporter:                PEGGY W. WEBER, RPR
21                                 Official Court Reporter
                                   U.S. District Court
22                                 P.O. Box 362
                                   Lexington, Kentucky  40588
23                                 (859) 421-0814

24

25  Proceedings recorded by mechanical stenography,
    transcript produced by computer.
```

1      (Whereupon, the Pretrial Conference Hearing

2  proceedings commenced on Monday, May 22, 2017, at

3  1:30 p.m., on the record in open court, as follows.)

4           THE COURT:  Thank you.

5           Madam Clerk, if you would call the matter

6  scheduled for 1:30, please.

7           THE CLERK:  Yes, Your Honor.

8           Lexington Criminal Action Number 16-22,

9  United States of America versus Alfred Bradley Adkins,

10  called for pretrial conference.

11           THE COURT:  Thank you.

12           If counsel could state their appearances,

13  please.

14           MR. DAVIS:  Good afternoon, Your Honor.

15           THE COURT:  Mr. Davis.

16           MR. DAVIS:  Dustin Davis and Elizabeth Wright

17  on behalf of the United States.

18           THE COURT:  All right.

19           MR. STEVENS:  Jonah Stevens on behalf of

20  Dr. Alfred Adkins, seated to my right.

21           THE COURT:  Okay.  Thank you.

22           This is scheduled for a final pretrial

23  conference this afternoon.

24           I have a few things to go over with the

25  parties, and then there are some motions that we'll need

1    to address, and after that if you have any questions

2    about the trial or procedures or any of the mechanics for

3    trial, I'll certainly try to answer those for you.

4              I received United States ex parte filings just

5    a few moments ago.  It looks like the government will

6    take maybe four to five days to present its case.

7              Is that fair, Mr. Davis?

8              MR. DAVIS:  Your Honor, we would think so, but

9    depending on the length of cross-examination, it could

10   certainly run a week and a half or so.

11             THE COURT:  All right.  Mr. Stevens, at this

12   point how long do you anticipate your case would take?

13             MR. STEVENS:  Judge, we think that our case

14   will probably take anywhere between four and five days at

15   the most.

16             THE COURT:  All right.  Well, let's go over our

17   schedule then and see how we're going to fit things in.

18             We're scheduled to begin on June 5th, on a

19   Monday.  I have all five days available that week.

20             The following week I have a meeting in the

21   Sentencing Commission.  It's out of state.  I'll be out

22   of the office Tuesday, Wednesday, and Thursday of that

23   week.

24             The next week, which would be June 19th, I have

25   one matter on Monday that I could reschedule.  I'm

1    scheduled to be out of town Thursday and Friday, but I

2    could probably cancel that trip, if necessary.

3            And then the following week of the 26th, I have

4    a pretty aggressive schedule with a number of trials that

5    are set that have Speedy Trial Act issues in those

6    matters.

7            So what I would anticipate doing would be

8    starting on Monday June 5th.  I'm going to move the

9    starting time up a half an hour with counsel to be

10   present at 8:30, and the jury to be present at 9 o'clock.

11           I typically will have the jury here and ready

12   to go 9 o'clock every day, and we usually go until about

13   5:00.  So we usually go 9:00 to 5:00, with about an hour

14   and 10 minutes for lunch break, and I take one break in

15   the morning and usually one in the afternoon, sometimes

16   two if it's going a little bit slow, and we need to give

17   the jury an extra break, I will sometimes do that in the

18   afternoon.

19           So we would have those five days.  If counsel

20   prefers, that following week we could be in session on

21   Monday and then again on Friday, those two full days.

22           And then we would start up again on the 19th.

23   And probably out of an abundance of caution, I should

24   cancel the trip I have scheduled on the 22nd.  That would

25   give us two full weeks and then plus two days if you

5

 1  believe we could get the case in that amount of time.

 2            Mr. Davis, I know it's hard to predict.

 3            MR. DAVIS:  Yes, sir.

 4            THE COURT:  I hesitate to reschedule those

 5  things the week of the 23rd --

 6            MR. DAVIS:  Yes, sir.

 7            THE COURT:  -- or the 26th if I can avoid that.

 8            Mr. Stevens, you think that's doable?

 9            MR. STEVENS:  That's very possible, Your Honor.

10            THE COURT:  All right.  Well, we will plan on

11  proceeding in that manner.

12            One of the things that I do if things start to

13  slow down a little bit, sometimes I'll extend the day a

14  bit.  I hate to do that with a jury, because we do have

15  jurors that travel in some cases, some distances to be

16  here.  But we'll -- we'll make every effort we can to

17  complete the case in that -- in that amount of time that

18  is allotted.

19            Much of the information that you'll need about

20  movement in the courtroom, some of my procedures are

21  outlined in my decorum order that's filed in every case.

22  I do suggest that you take a look at that, and if you

23  have any questions about any of those matters, you can

24  either raise those today, or we'll meet at 8:30 on the

25  first day of trial, on June 5th, and we can go over any

6

1    of those matters that you're not comfortable with.

2            One of the things that I do in most criminal

3    cases, I'll just point this out, in terms of exhibits, I

4    don't know if you're going to have exhibit notebooks that

5    you will use with witnesses or if you're just planning to

6    use electronic versions with witnesses.  We'll use

7    courtroom B across the hallway, and there are monitors in

8    the jury box.  But if you're planning to use documents, I

9    generally will have the security officers pass those

10   documents to witnesses.  Now, it may be that you have a

11   lot of exhibits that you will be using with a number of

12   witnesses.  You can put those in notebooks, and you can

13   have those available on the witness stand so they can

14   turn to a particular exhibit.

15           I know that the parties filed some stipulations

16   about a number of exhibits, and so I assume those are not

17   in controversy.  I don't know how voluminous those would

18   be, but if you do have exhibits that you know are not

19   subject to objection, you may want to go ahead and put

20   those in a notebook and have those available, and that

21   way we don't have to move back and forth with passing

22   documents to witnesses.

23           I generally don't use notebooks for jurors.  I

24   find that if we try to do that, sometimes jurors don't

25   always keep up to the right page or the right exhibit, or

1    sometimes they're looking at documents when you're trying

2    to make a point.  So I generally don't like to use

3    notebooks for the jurors in the courtroom.

4          Let me go over the jury selection process.  I

5    know that there's one of the objections -- oh, I'm sorry,

6    one of the motions in limine that was just recently filed

7    that may relate to some of the voir dire, and we'll get

8    to that here in just a moment.

9          But let me just go over the procedures that I

10   follow generally in selecting the jury.  I would expect

11   that we would have about 60 jurors that would be called

12   in for this case.  The courtroom across the hall, in case

13   you haven't been over there, or haven't been over there

14   recently, it is a little bit small, so I will have to use

15   the jury box to put some of the prospective jurors in

16   initially, and we may need to put a row of chairs in

17   front of the box.  So we will have the back of the

18   courtroom that will be filled.  I like to keep one row

19   empty in the back of the courtroom.  But we'll have to

20   use the jury box and then probably some seats in front of

21   the box.  And then as we get down to calling prospective

22   jurors, I have to move people around, and I'll tell you

23   how I do that here in just a moment.

24          But initially we'll have 60 jurors,

25   approximately 60 jurors, will be called in.  We will have

1  a few that will have conflicts, scheduling conflicts.

2  I'll take those up separately.  I generally do that

3  toward the end of my questions.  But I'll go through my

4  standard set of questions first.  And I would anticipate,

5  although, there will be a few more questions in this

6  particular case because it has received a little bit of

7  publicity.  But I generally can finish my questions in

8  about an hour-and-a-half, and I will give the parties

9  usually 15 to 20 minutes per side to do any follow-up

10  voir dire.

11          I ask you in your voir dire not to argue the

12  case to the jury and not to ask for promises.  And if you

13  can avoid those two matters, it's generally not a

14  problem.

15          As I said, there is an issue that we will take

16  up here in a moment about the voir dire questions, but

17  generally if you can avoid those two issues; that is,

18  arguing and asking for promises.

19          Because you have limited amount of time, you

20  need to be cognizant of the fact that if you get bogged

21  down asking one question of all of the prospective

22  jurors, you'll run out of time before you know it.

23          And I would also suggest that you not ask

24  questions that have been asked and answered, unless you

25  need to follow up.  Now, you're not prohibited from doing

1  that, but, again, because you do have limited time, you

2  may want to use your time wisely and avoid asking

3  questions that have been asked and answered.

4  In terms of introducing exhibits -- and again

5  part of this is outlined in my decorum order, but I ask

6  you not to show exhibits to the jury until the exhibit

7  has been introduced.  The monitors can be turned on so

8  that the witness in the witness box will be able to see a

9  document if it is an electronic version without the jury

10  seeing it.  So you can actually show a witness a

11  particular document in terms of laying the foundation for

12  its introduction.

13  And then once you move for the admission of the

14  document, if there's any objections, then I take those

15  up, and I will again refer you to the decorum order of

16  making objections and not making speaking objections.

17  But at that point if there's no objection, or

18  if I admit it over objection, then you can show the

19  document, or the exhibit, to the jury.  You can simply

20  ask that it be displayed or shown to the jury, and the

21  clerk can then turn on the screen in the jury box, and

22  the jury can then see those exhibits.  And then if you

23  need to point out anything specifically about a document,

24  you can certainly -- you can certainly do that.

25  When we have a lengthy trial, I do try to avoid

10

1   what I would call unnecessary bench conferences.  There

2   may be times when you do need to come up to the bench,

3   but -- and generally early in the case that will happen

4   more often than later.  But after you become a little bit

5   more familiar with the procedures that I follow, really

6   there's not a need to have a bench conference every time

7   there is an objection.

8          But if you do have an objection to a particular

9   bit of evidence, if you could just generally state the

10  basis for the objection, whether it's hearsay, or

11  whatever it may be.  I can usually address that.  If I'm

12  not sure for the basis of the objection, I may ask you to

13  come up to the sidebar.  And if you feel like I don't

14  understand what the objection was, or if there's some

15  exception that you think would apply, you can ask for a

16  bench conference, and we can certainly discuss that at a

17  sidebar conference.

18         At the very beginning of the case, there will

19  be two things that will be on your tables when you come

20  in the first morning of trial.  There will be a statement

21  of the case, which is generally the statement that I use

22  to tell the jury what the case is about.  So during my

23  voir dire after I've had some just brief introductions,

24  I'll ask the jury if they know anything about the case.

25  I want to make sure that they don't have any personal

11

1    knowledge of the case, and that they're otherwise

2    qualified to serve.  So I'll advise them generally about

3    the case.

4              The statement of the case is usually no more

5    than a page.  It may be a page and a half.  But it's just

6    intended to give the jury just a thumbnail idea of what

7    the case is about.  So you'll have that on your desk.

8              You'll also have a set of preliminary jury

9    instructions.  The preliminary jury instructions will

10   have some boilerplate language, very generic language

11   about what the jury should do when there's an objection

12   and when the objection is sustained, when it's overruled.

13   And then there will be elements for each of the offenses

14   that are charged in the case that will be presented to

15   the jury.

16             So the jury will know what it is that they need

17   to look for in the case, the specific elements of each of

18   the counts that will be presented to them.

19             So you'll have a chance to look through those

20   preliminary jury instructions, and we can go over those

21   before the jury comes in if you have any questions or

22   concerns about any of the materials outlined in either

23   one of those two documents.

24             I've looked through your draft jury

25   instructions, and I have a few questions for you, and we

12

 1   can take those up at the end of the pretrial this

 2   afternoon as well.

 3          But before we do that, let me get to these

 4   motions that have been filed.  I indicated, I believe,

 5   last week that I wanted to hear arguments on one of these

 6   motions, and this is the motion, I believe, filed by the

 7   defendant, seeking to exclude evidence pertaining to the

 8   re-determination hearings that resulted in termination of

 9   benefits.

10          The motion specifically doesn't indicate that

11   the defendant is seeking to avoid evidence or testimony

12   about the re-determination hearings that did result in

13   benefits being granted.  I do want to hear from the

14   defendant as to why that distinction would be made,

15   number one, but also I do have some questions for you.

16          So inasmuch as it's defendant's motion,

17   Mr. Stevens, would you like to address that matter?

18          MR. STEVENS:  Yes, Your Honor.  In filing that

19   motion on behalf of Dr. Adkins, it is our view that the

20   re-determination hearings were -- where the claimants'

21   benefits were taken away or terminated, and then the way

22   I understand it from the majority of the hearings, that

23   Dr. Adkins's medical reports are excised out of it, that

24   if that was to be presented to a jury, it would confuse

25   them to be thinking that a judicial finding has already

13

 1  been rendered against him, that his RFCs or his reports

 2  were fraudulent in nature.

 3          THE COURT:  Well, the issue in those cases is

 4  not fraud on the re-determination process.  Really, the

 5  issue would just be whether his RFCs would be material to

 6  the initial determination, whether it was a material

 7  matter that was submitted for consideration, because it's

 8  not -- the re-determinations are not to determine that

 9  fraud was involved but just to determine whether there

10  was sufficient evidence to sustain the benefits with that

11  information being removed from it.

12          The government takes the position that that's

13  the only purpose is to establish that those RFCs were, in

14  fact, material to those particular claims, and it would

15  be not just -- really, it would be all claims that were

16  submitted, whether they were material.

17          So it's not a fraudulent -- it's not a

18  determination of fraud.  So as you indicate, it wouldn't

19  be -- we wouldn't be having mini-trials on those issues,

20  and the jury can certainly be instructed that the

21  question presented on those re-determinations is not an

22  issue of fraud.  It's just whether there is sufficient

23  evidence to award benefits.

24          So that takes away some of the 403 argument or

25  analysis, I think, more prejudicial than probative

1   analysis.

2   MR. STEVENS:  We think it is a fine line,

3   Judge, that -- and I understand the Court's logic.  I

4   just think that the nature of this case that a jury could

5   maybe misconstrue that just excising out his report was

6   the key determination.  And we think that would -- it

7   would put him precarious position to have to defend that

8   on the stand, and we think it's the safest and most

9   prudent move, and the best for the Court and for the

10  trier of fact, the jury, that none of the negative

11  redeterminations be brought forth to them in that manner.

12  THE COURT:  Well, should any of the -- in that

13  case should any of the determinations be discussed to

14  the -- with the jury?

15  MR. STEVENS:  Well, we --

16  THE COURT:  In other words, you can't really

17  have it both ways because if it's confusing, or likely to

18  confuse the jury, with respect to hearings in which there

19  were termination of benefits, couldn't the same argument

20  be made with respect to those hearings in which the

21  benefits were not terminated?

22  MR. STEVENS:  Yes, I can see that, Your Honor,

23  but I'm not sure exactly how their line of proof will

24  come out on that, that they would even -- I don't think

25  they would probably bring that up as evidence in their

15

1   case.  I'm only looking at it in the most negative light

2   to protect the defendant.

3           THE COURT:  All right.  If -- if the

4   United States is able to offer some evidence of this

5   re-determination process, and I'm assuming that there's

6   going to have to be at least some explanation of where we

7   are factually, what happened, those are not final

8   determinations at this point.  Correct?

9           MR. STEVENS:  I would agree with that.

10          THE COURT:  And if -- I'm just wondering out

11  loud that if it weren't possible to instruct the jury

12  just factually what's happened, that these

13  re-determination process -- or processes that are going

14  on and give them a limiting instruction that these are

15  ongoing proceedings, that the issue in those cases --

16  those cases would not be whether there is fraud, just

17  whether they are entitled to benefits, and in some cases

18  benefits were not removed, and in other cases they were

19  terminated.  That doesn't really get into having

20  mini-trials in those issues, but it basically just tells

21  the jury this is where we stand on these matters.

22          MR. STEVENS:  I think my biggest concern is

23  just that the re-determinations if they talk about the

24  benefits being terminated, and it's tied in with his

25  report being excised out.  That's my biggest concern.  If

16

1   the Court can tailor a limited instruction to shield him

2   from that, then I guess the defendant wouldn't have any

3   problem.

4           THE COURT:  All right.  Let's see what --

5   Mr. Davis, let's see what the government's position is.

6           I assume -- well, first of all, let me just say

7   that the biggest concern that I have would be mini-trials

8   on these issues, number one, confusing the issue of

9   re-determination versus fraud.

10          MR. DAVIS:  Yes, sir.

11          THE COURT:  Number two, these are not final.

12          MR. DAVIS:  Right.

13          THE COURT:  Number three, if you open the door

14  in terms of benefits that were terminated, doesn't that

15  allow the defendant then to get into the specifics of

16  those individual cases?  In other words, I'm assuming

17  that in some of those cases, Mr. Adkins's RFC was not the

18  only evidence that was submitted.

19          MR. DAVIS:  Right.

20          THE COURT:  And so I'm a little bit concerned

21  that the jury may draw an improper inference if we only

22  touch the surface and say that there were all these RFCs

23  that were submitted originally.  Once they were excised,

24  we have these re-determinations, and there were 88 cases

25  in which benefits were terminated.  That may not give a

17

 1   complete story to the jury.

 2              MR. DAVIS:  Yes, Your Honor.  The government's

 3   position as evidenced in its paper was that these

 4   re-determination processes, as the Court points out, does

 5   evidence the materiality of these documents with regard

 6   to the decision-making process in the Social Security

 7   Administration.

 8              I am sensitive to the Court's concern.  In my

 9   mind the way this evidence could be presented at trial

10   would simply be to have a witness discuss what the

11   re-determination process is, to articulate that in 216

12   cases where the defendant had submitted medical evidence,

13   those documents were removed for purposes of the process.

14   We don't have to mention fraud.  They were removed for

15   the purposes of the process.  After these cases went

16   through the process, in 266 cases, 88 decisions were

17   reversed, and the remainder remained the same.

18              And I think if we keep it at that high level,

19   evidence of materiality of those documents without

20   getting into what Mr. Stevens's concern was.

21              THE COURT:  Well, does that give a false

22   impression though that they're not final determinations

23   that would be subject to review, judicial review, number

24   one; and, number two, you may be opening up a can of

25   worms in the sense that you have one judge from this

18

 1   Court that found that the re-determination process itself

 2   is unconstitutional.  That's an issue that's currently

 3   before the Sixth Circuit.

 4            MR. DAVIS:  Right.

 5            THE COURT:  Now, let's assume for a moment that

 6   Judge Thapar were trying this case, he reached a

 7   different conclusion than I did with regard to the

 8   constitutionality of the re-determination process.  I

 9   would assume that he would say to you, no, you can't

10   introduce any of this evidence at all about

11   re-determinations because I found that the whole process

12   itself is unconstitutional.  That doesn't mean that the

13   defendant may not have committed the offenses that are

14   charged.

15            So I'm wondering if maybe materiality isn't it

16   a red herring in this particular case?  You can prove

17   your case really without showing materiality on Count 1,

18   can't you?  It's a conspiracy to commit mail fraud and

19   wire fraud, and the elements of that are really just

20   two-fold.  There was an agreement to commit those

21   offenses, and he participated in the agreement.

22            Now, for the individual counts of wire fraud

23   and mail fraud, you have to show materiality, but you

24   have individual claimants that are involved that you

25   would have to show it with respect to in those counts;

19

1    correct?

2              MR. DAVIS:  Yes, Your Honor.

3              THE COURT:  So I'm assuming that in those

4    Counts 2, 7, and 10 -- 2 is mail fraud regarding a claim

5    of DC, 7 I'm assuming is the same claimant.

6              MR. DAVIS:  Yes.

7              THE COURT:  And then number 10 is false

8    statements account involving the claimant JMJ.  So I'm

9    assuming in those counts, those individual counts, that

10   you are going to get into specifically what was done in

11   those individual cases --

12             MR. DAVIS:  Yes, sir.

13             THE COURT:  -- to make those material.

14             MR. DAVIS:  Yes, Your Honor.

15             THE COURT:  So you'll have these individual

16   counts where materiality is an issue, but it's not

17   necessarily an issue in Count 1.  I'm assuming you do

18   want to show materiality.

19             MR. DAVIS:  We do.

20             THE COURT:  Because of that underlying -- the

21   underlying theory in the case is that this was very

22   extensive, it's -- and it is evidence of -- of the

23   underlying offenses, mail fraud and wire fraud.

24             MR. DAVIS:  That's correct.

25             THE COURT:  But you could -- you could

20

1    technically prevail without showing materiality as to

2    Count 1.

3              MR. DAVIS:  Technically we could, although the

4    government's position is obviously stronger if we do show

5    how these were material to the decision-making process

6    with regard to why the conspiracy was executed.

7              THE COURT:  If you are allowed to introduce

8    evidence of the process itself, that there was this

9    re-determination process, X number of cases, and a

10   portion of those cases benefits were not terminated and a

11   portion of the cases they were terminated, in fairness

12   isn't the defendant then allowed to get into, in

13   cross-examination, any of that?

14             In other words, can't -- let's take a couple

15   hypothetical cases in which his evidence was the only

16   evidence.  The RFC that he submitted was the only

17   evidence that supported a claim of disability benefits.

18   That one is pretty straightforward.  You take his

19   evidence out.  If the claimant doesn't have any other

20   evidence, he can still argue, not that it was -- well, I

21   guess he would have a different argument perhaps because

22   at that point there is no evidence at all for the

23   claimant.

24             MR. DAVIS:  Right.

25             THE COURT:  Claimant may make the argument in

1   the re-determination process that I didn't have enough

2   time to submit other evidence.  The evidence has to

3   relate back --

4           MR. DAVIS:  Correct.

5           THE COURT:  -- to the time in which the claim

6   was actually made.  Lots of different issues perhaps to

7   try to explain away materiality, but then you get into

8   this gray area where you may have a physical disability,

9   as well as a mental disability, and it may cut against

10  you, your argument I would assume if you have one or two

11  or 10 or 20 of those cases in which you take out the RFC

12  from the defendant, and there's still sufficient evidence

13  to support a claim of disability based on the physical

14  disability.

15          MR. DAVIS:  Right.

16          THE COURT:  Or perhaps the individual comes up

17  with another mental health professional that's able to

18  submit evidence that, in fact, that there was a mental

19  disability.

20          So it's -- I would assume that if you -- once

21  you get into this, if you get into this issue of just the

22  raw numbers, that that does allow the defendant then to

23  get into the details and to perhaps explain away some of

24  the 88 cases.  Wouldn't you agree?

25          MR. DAVIS:  I think -- as the Court pointed

1   out, it does cut both ways.  It cuts, I guess, for the

2   government in that it shows materiality, and then

3   certainly the defense has the ability to undermine that

4   evidence with specifics.

5            THE COURT:  Right.  And you've identified the

6   specific cases in which you would be relying?  You've

7   identified those for defense counsel?

8            MR. DAVIS:  I believe we have.

9            THE COURT:  Okay.  All right.  Well, I'll

10  address this in a separate opinion.  I do want to look at

11  a couple of additional matters, but I believe I do

12  understand your respective positions on this -- on this

13  issue.

14           I believe there's a second motion -- or second

15  and third motion in limine that were filed by the

16  United States.  One relates to a 802(d)(2) issue in terms

17  of self-serving statements that are contained in -- can

18  be contained in a variety of prior testimony or a variety

19  of other matters.

20           And then there's a separate motion in limine

21  with respect to mentioning potential punishment.  So

22  let's address those if we could.

23           I know that the defendant has not had an

24  opportunity to file a written response, and I do want to

25  see if he would like to do that before I do issue a final

23

1   decision.  But since we are here today, I do want to get

2   your preliminary thoughts on those matters.

3          So, Mr. Davis, would you like to begin on this

4   issue?  And let's take what I refer to as 802 issue first

5   if we could.

6          MR. DAVIS:  Yes, Your Honor.  With regard to

7   the government's motion in limine to exclude self-serving

8   statements, the government intends to introduce at trial

9   statements made by the defendant pursuant to

10  801(d)(2)(A).  This would be admissions of party

11  deponent.  These are portions of the testimony provided

12  to the Senate, these would be statements made to law

13  enforcement, and this would be statements made to the

14  grand jury in the Western District of Virginia.

15         The government believes the rules exclude any

16  sort of self-serving statement made by the defendant in

17  those context.

18         For instance, if the government were to play a

19  portion of the video or audio wherein the defendant makes

20  a statement -- and, again, subject to the rule of

21  completeness -- the government thinks that the rule also

22  excludes the defendant from then taking that same exhibit

23  and then playing any sort of portion of the audio or

24  video that would serve his own purposes and perhaps avoid

25  him taking the stand and be subject to cross-examination.

1           THE COURT:  All right.  So, in other words, you

2    have these recorded statements, and I've seen the ones

3    that you're referring to, although, I haven't looked at

4    the details of any of those.  But there is also Rule 106,

5    rule of completeness.  In other words, let's say a

6    defendant is being questioned by an agent, and the issue

7    is whether he admitted to the underlying basis for

8    whatever he may be charged with.  Yes, I was in the car,

9    the car ran the stop sign, and hit a pedestrian.  But

10   then he also says, but I wasn't driving the car.  You'd

11   have to allow that "I wasn't driving the car" in as a

12   rule of completeness.

13           MR. DAVIS:  I agree.

14           THE COURT:  But if he says, yes, I did it; yes

15   I shot Mr. so-and-so, but I was drunk, that wouldn't come

16   in necessarily.  That would not come in under the rule of

17   completeness.  He would have to actually take the witness

18   stand and testify to that if he wanted that part of the

19   statement to come in.

20           MR. DAVIS:  I would agree.

21           THE COURT:  So that's -- it's parsing it, but

22   there's also then, I guess, statements of co-conspirators

23   that can come in, but it would be subject to the same

24   limitations because that would be an exception to the

25   hearsay rule.

1          MR. DAVIS:  Yes, Your Honor.

2          THE COURT:  801(d)(2)(E).

3          Now, again, you have certain parts that you'd

4   want to play, but then you would not want to play the

5   other parts, and you would anticipate that the defendant

6   then would want to play those other sections that would

7   be --

8          MR. DAVIS:  Perhaps.

9          THE COURT:  -- beneficial to his case.

10         All right.  Mr. Stevens?

11         MR. STEVENS:  Yes, Judge.  We think that the

12  rule of completeness should fall on behalf of the

13  defendant, because I'm referring to the same testimony he

14  was questioned by several of the Senators.  And the

15  questions were weaved in and out to make it a total

16  coherent proceeding.  But other than that I can probably

17  alleviate counsel, his concern, about whether or not

18  Dr. Adkins intends to take the stand.  It is my

19  understanding, and I think I'm accurate in that, that the

20  defendant does choose to take the stand.

21         THE COURT:  Well, even if he does, you still

22  couldn't use these -- these other statements while the

23  government's witnesses were testifying.  You would have

24  to wait, and he would have to make -- or to testify

25  himself.

26

1              There's several cases from the Sixth Circuit

2    that really do address this, and one older case that I

3    will call to the parties' attention is Shaver case.  It's

4    unreported, but it's 89 Federal Appendix 529 to page 533.

5    It's a 2004 case.  I know I'm showing my age when I talk

6    about old cases in 2004.

7              I would call that to your attention.  There's

8    several others in which the Sixth Circuit has addressed

9    the issue -- the interplay between 801 and 802, and also

10   Rule 106.

11             It's -- it will be difficult for the Court to,

12   unless I understand the context of these statements that

13   you may want to introduce in response, as a general

14   matter, these -- the self-serving statements would not

15   come in unless they are part of the statement itself.

16             And, again, the Sixth Circuit has addressed

17   when this does come in under the rule of completeness.

18   And unless I know the specific statement, it's going to

19   be hard for me to make a ruling in advance of trial, but

20   it may be that I'll be able to prophylactically address

21   matters in terms of voir dire, in terms of opening

22   statement, what can be mentioned and what can't be.

23             But the better rule of thumb on this will be

24   that if you think that it's going to be a problem, make

25   sure that you approach the bench before raising it in

27

1    front of the jury, and then I'll be able to address the

2    specifics of the case, whether it would constitute

3    something that would be admissible under 106 or whatever

4    would be excluded under the rule.

5           MR. DAVIS:  Yes, Your Honor.

6           THE COURT:  All right.

7           MR. STEVENS:  Judge, would -- am I fair to say

8    that I would have to do a written response to their

9    filed --

10          THE COURT:  If you want.  I mean, if there's --

11   and specifically if there's something that you think that

12   you would want to use in cross-examination of one of the

13   government's witnesses, I don't know if it's going to be

14   Senate testimony or whatever it may be, but if you have

15   it and you know that you want to use it and you do want

16   ruling on it in advance, you can certainly file a

17   response.

18          Do you think you would like to do that?

19          In other words, it's going to be --

20          MR. STEVENS:  I'm not sure what their

21   particular statements are they're trying to exclude, but

22   I'll try to -- I'll try to give a good review.

23          THE COURT:  All right.  Well, keep in mind, and

24   the ruling will be -- I'll sustain the objection

25   generally because it's a correct statement of the law.

28

1  But motions in limine are pretrial non-final

2  determinations by the Court.  And so if there is an issue

3  that you want me to revisit, I can certainly do that, but

4  I'll need to have some context in terms of how you think

5  that a particular bit of testimony from a prior

6  proceeding might be admissible under the doctrine of

7  completeness, which has been codified in Rule 106 of the

8  Federal Rules of Evidence.

9          Unless you see something like that, I won't

10  require that you file a written response, but if you

11  think that there's something that you believe should come

12  in under that rule, then you can certainly do that and

13  ask me to reconsider that, and I'll take a look at it

14  before the trial of the case.

15          MR. STEVENS:  Thank you, Your Honor.

16          THE COURT:  All right.  And then --

17          MR. DAVIS:  Your Honor, if I may.

18          THE COURT:  Yes, sir.

19          MR. DAVIS:  The government on today's date went

20  ahead and provided defense counsel with an advance copy

21  of its exhibits, as well as its exhibit list.  I can

22  certainly work with defense counsel to identify the

23  excerpts of the videos that the government will intend to

24  introduce and work with him with regard to the rule of

25  completeness and self-serving statements.

29

 1           THE COURT:  All right.  That would be

 2  appreciated.  And that way that will help you identify

 3  which sections you may want to seek to admit.

 4           But as a preliminary matter, that motion,

 5  because I'm not going to require a response, I'll sustain

 6  that motion for the reasons stated.

 7           But, again, if you would like me to reconsider

 8  after you have had a chance to look at those segments or

 9  clips of portions of testimony, you can ask me to do

10  that.

11           And there's a third motion in limine that

12  addresses possible penalties or punishment.  And I've

13  looked at some of the voir dire that was referenced in, I

14  believe, the footnote.  Some of it would be objectionable

15  simply because it would not be relevant.

16           Generally what I will do and what I have been

17  doing recently is I have been advising the jury during my

18  portion of the voir dire that any issue about punishment

19  if there is a conviction on any -- on one or more counts,

20  is within the exclusive province of the jury and is not

21  to be considered by them in any way, which parrots the

22  language of the pattern jury instruction from the

23  Sixth Circuit.

24           And so generally I just take that issue off the

25  table at the very beginning, and that really makes some

30

1  of the other points moot points.

2          Now, in some of the proposed voir dire

3  questions that the parties had tendered to me, I think

4  Mr. Stevens had essentially that similar question that he

5  was going to submit.  It's question 64, "If you're chosen

6  as a juror, and you and your fellow jurors convict the

7  defendant, you will have no say whatsoever in the

8  sentencing phase of the trial.  Knowing this aspect of

9  the trial, does this affect your ability to sit as a fair

10 and impartial juror to decide guilt or innocence," which

11 I think is a proper question to ask.

12         The other questions that were the subject or

13 that were mentioned in the motion that include 31, but

14 it's just a reference in that he may face a term of

15 imprisonment.  I would sustain the objection if an

16 objection were made to that question.  But I will say

17 that that's always a possibility in a felony charge.

18 That's -- a term of imprisonment is always a possibility,

19 and even in misdemeanor cases.

20         Do you personally know anyone in prison was

21 another question, or have you ever -- have you or someone

22 that you know ever worked in a prison?  I would probably

23 sustain the objection to those questions because it's

24 just not relevant to the case, unless there's some way

25 that it is tied in, number one.

1          And, number two, because the parties have such

2   a limited amount of time, I wouldn't think that that

3   would be an area that you would want to inquire into in

4   any event.  I don't think you want to spend your time on

5   that particular -- on that particular question.

6          But I will tell you that if there was -- if

7   that question were asked and if there was an objection, I

8   would sustain it, because of relevancy more than anything

9   else.  And so I'll as a preliminary matter sustain the

10  motion for those -- for those reasons.  I don't think

11  that there's really a strong point on this, but, again,

12  if you disagree, if there's another reason that you would

13  want to ask that question, you can ask me to reconsider.

14          MR. STEVENS:  All right.

15          THE COURT:  All right.  All right.  Well, let

16  me open it up then, and I will try to answer any

17  questions that the parties may have that I haven't

18  covered to this point in the -- in the pretrial

19  conference.

20          Mr. Stevens --

21          MR. STEVENS:  Yes, Your Honor.

22          THE COURT:  -- if you'd like to go first.

23          MR. STEVENS:  In trying to forecast and having

24  the defendant's witness present when it's most needed in

25  his case-in-chief, will there be any type of advance

32

1    notice that we would have when his case would start or --

2                   THE COURT:  I generally will check.  Especially

3    in a longer case, I will ask the attorneys at the end of

4    the day how we are doing.  One of the things I do, and

5    the government has done this in this matter, in their

6    witness list that was just tendered just before the

7    pretrial conference, there is an estimation of the amount

8    of time for direct examination.  And so I'll check at the

9    end of the day.  If we are going a little more quickly

10   than that time would indicate, I don't want you to be

11   caught flatfooted with your witnesses.

12                   So that's why at the beginning of this hearing

13   I asked the United States, or made the comment, that it

14   looks like their case may take four to five days.  So as

15   we get, you know, three days into the case, if it looks

16   like you're going through your witnesses more quickly

17   than the time would indicate, I'll certainly check with

18   you and make sure that you have sufficient time to have

19   your witnesses present.

20                   MR. STEVENS:  Thank you.

21                   THE COURT:  I would assume that a couple of

22   days in advance would --

23                   MR. STEVENS:  Yes.

24                   THE COURT:  -- be sufficient.  But I'll

25   certainly do that.

1        MR. STEVENS:  Thank you.

2        THE COURT:  All right.  Anything else,

3   Mr. Stevens that you can think of?

4        MR. STEVENS:  No.  Not at this moment,

5   Your Honor.

6        THE COURT:  All right.  Mr. Davis or

7   Ms. Wright?

8        MR. DAVIS:  Yes, Your Honor.  With regard to

9   stipulations of fact, is -- the defense and I have been

10  working toward stipulations of fact.  Is that something

11  we file into the record, or is that something we exhibit

12  and present to the jury?  I didn't know what --

13       THE COURT:  I do it a couple of different ways,

14  and I generally will leave it up to the parties in terms

15  of how they want to present it.  Because it may be that

16  you have stipulations, and you may have five stipulations

17  that you've agreed to, but it doesn't make sense to read

18  all of those to the jury at one time.

19       So generally what I will do is ask you, or

20  suggest to you, that you can do it one of two ways.  You

21  can advise me in front of the jury that you've reached an

22  agreement with the defendant to stipulate to certain

23  facts in the case, and that you would like to go ahead

24  and present two of those or three of those to the jury at

25  this time.  And you can either read those to the jury, or

34

1  if you want to file those in the record, you can ask me

2  to do that.

3         And basically what I will do as either part of

4  reading the stipulation or after you have read the

5  stipulation or opposing counsel has read the stipulation,

6  I'll then turn to the jury and explain to them what a

7  stipulation means, which is essentially the parties have

8  agreed to stipulate to the following facts.  You may

9  accept those facts as proven without any further proof

10 being offered, but you're not required to do so.

11        So every time there is a stipulation or there's

12 a request for -- that I take judicial notice of certain

13 facts, I will give that same limiting instruction to the

14 jury.

15        And it really doesn't matter to me whether you

16 want to present the stipulation, whether you want me to

17 do it.  I'm comfortable doing it either way.  So however

18 you-all would like to do that, at the time that you want

19 to present those stipulations that is really the key.

20             MR. DAVIS:  Yes, sir.

21             THE COURT:  All right.  Any other questions or

22 issues?

23             MR. DAVIS:  Yes, Your Honor.  With regard to

24 the redaction of exhibits, we've turned over, and we

25 intend to present at trial voluminous records with regard

35

1   to Social Security disability claimants' files.  We

2   are -- I'm not certain what the Court's practice is so I

3   guess my first question is what is the practice with

4   regard to redacting?  And if the Court is so inclined to

5   have exhibits redacted, would the Court permit the

6   government and/or the defendant to file some briefing on

7   that issue?

8            THE COURT:  If -- let's talk about one of two

9   ways.  First, if there's an agreement to do it a certain

10  way, and if there's not an agreement.

11           I would imagine that with respect to

12  Social Security records, which will include lots of

13  medical information, lots of personal identifying

14  information, and perhaps reference to minors.  Anything

15  that you file in the record or that's available as an

16  exhibit that's not either placed under seal or that's not

17  redacted is available for the general public to review,

18  and so we have policies and procedures that we follow in

19  Social Security cases to avoid all of that information

20  from being made available to the public.

21           Now, query, we take some elaborate procedures,

22  but then we file memorandum opinions and orders that talk

23  about all of those -- that personal information.  That's

24  for another day.

25           But I suggest that you may want to consider one

36

1    of two options.  One would be heavily redact, and then

2    filing the originals or the unredacted versions under

3    seal, and that way there's a record.  If the

4    Sixth Circuit needs to look at something in unredacted

5    form or if a third party believes that you redacted

6    something that you shouldn't, then there is a record of

7    that.

8         In other words, if the newspaper comes in and

9    says, you know, I think that all these black-outs here

10   are totally unnecessary, and I'd like to find out more

11   about this claim, and so we want this copy of this

12   original document to be produced.  I'll have something I

13   can look at to compare that and make a record as to

14   whether redaction was or was not appropriate.

15        And so it may be that you just have a backup

16   set that you use, an unredacted backup set, and it may be

17   better -- and I'm sure the parties would be able to agree

18   to this in terms of how much should be redacted, but I'm

19   not going to have the time to go through those documents

20   and make sure all those redactions have been properly

21   made.

22        Again, because it's not just the claimant and

23   the specific medical information, which may include the

24   entire page or pages or reams, but it can include

25   reference to children, and I'm not going to necessarily

1  know minor children as I go through those records.  And

2  so that would be my suggestion.

3          MR. DAVIS:  Yes, Your Honor.

4          THE COURT:  Does that sound feasible?

5          MR. DAVIS:  I think so.  We may do some

6  research, and we can certainly brief -- brief it for the

7  Court.

8          THE COURT:  Sure.

9          MR. DAVIS:  And have conversation with defense

10 counsel.  So we'll talk about that.

11         THE COURT:  All right.  If it is something

12 that's going to take a lot of time, we may want to take

13 it up in advance of that June 5th day.

14         MR. DAVIS:  Yes, Your Honor.

15         THE COURT:  So you can -- if you do want to

16 file anything, certainly go ahead and do that.

17         MR. DAVIS:  Yes, sir.  Thank you.

18         THE COURT:  Mr. Stevens, does that -- do you

19 think that will present a problem in terms of redactions?

20         MR. STEVENS:  We'll get with the government and

21 try to figure out a -- formulate a plan.  That way we can

22 keep the pace of the trial going and not try to hit speed

23 bumps, which I guess are unnecessary personal

24 information.

25         THE COURT:  I do like to -- when -- once we get

38

1    started with the jury, I try to keep the jury in the box

2    as long as we can to get as much evidence presented,

3    testimony and evidence presented, to the jury without

4    lots of unnecessary breaks.  But there will be times

5    that -- and a lot of this will depend upon the specific

6    jurors that are selected.  But if I see someone that's

7    either not paying -- what I think is close enough

8    attention or if they're starting to nod off after lunch,

9    you may see me drop a book, make a loud noise, ask you a

10   question that you may think is out of left field, ask you

11   to come up to the bench.  I do try to keep an eye on the

12   jury.  And so there's sometimes there's -- appears to be

13   a lot of madness, but there is a method to the madness

14   that you may observe from time to time.

15            MR. STEVENS:  Yes, Your Honor.

16            THE COURT:  All right.  Thank you.

17            Are there any other issues we can take up while

18   we're here together?  If not, I've taken the one motion

19   under advisement.  I'll issue something on that hopefully

20   shortly and give you a little bit more guidance on that.

21            And then if -- on these other two issues if you

22   need to file anything on that and ask me to reconsider

23   after you've seen those excerpts, you can certainly do

24   that.

25            MR. STEVENS:  Thank you, Your Honor.

1    THE COURT:  All right.  Well, thank you all for

2  being here this afternoon.

3    I believe we have another hearing at 2:30; is

4  that correct?

5    THE CLERK:  Yes, Your Honor.

6    THE COURT:  All right.  We will be in recess

7  until 2:30.

8    (Whereupon, the Pretrial Conference Hearing

9  proceedings concluded at 2:20 p.m.)

10    C E R T I F I C A T E

11    I, Peggy W. Weber, certify that the foregoing is a

12  correct transcript from the record of proceedings in the

13  above-entitled matter.

14

15

November 27, 2017                    s/Peggy W. Weber

16    DATE                         PEGGY W. WEBER, RPR

17

18

19

20

21

22

23

24

25