UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 16-022-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 19-410-DCR |
| | ) | |
| ALFRED BRADLEY ADKINS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant/Movant Alfred Adkins has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 355] His motion contains one pending claim: that the trial court's imposition of a sentence was illegal because it failed to afford a meaningful opportunity for allocution at his sentencing hearing in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and Rule 32 of the Federal Rules of Criminal Procedure. [*Id.* at p. 5] The matter has been referred to United states Magistrate Judge Candace J. Smith for the preparation of a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b). Magistrate Judge Smith has recommended that Adkins' motion be denied without an evidentiary hearing and that no Certificate of Appealability ("COA") should issue. [Record No. 375] Adkins filed timely objections to the R&R on March 18, 2020. [Record No. 376]

Although the Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's

factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The Court has nonetheless conducted a *de novo* review of the matter and agrees with the Magistrate Judge's analysis. Adkins' motion will be denied , an evidentiary hearing is not necessary, and no COA shall issue.

## I.

On June 12, 2017, following a jury trial, Adkins was convicted on four charges stemming from a widely-publicized scheme to defraud the Social Security Administration. The counts of conviction included: conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count 1); mail fraud in violation of 18 U.S.C. § 1341 (Count 2); wire fraud in violation of 18 U.S.C. § 1343 (Count 7); and knowingly and willfully making false statements and representations to the SSA in violation of 42 U.S.C. § 408(a)(3) (Count 10). [Record No. 235] The Court sentenced Adkins on September 22, 2017.

The Court's interactions with the defendant and his sentencing counsel, Murdoch Walker, II, who represented Adkins on direct appeal and continues to represent him in this matter, form the basis of his § 2255 claim. Prior to allocution, the Court considered, *inter alia*, an enhancement for obstruction of justice under United States Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.1 based on Adkins' perjurious trial testimony. When the Court asked Walker to address the obstruction enhancement, the following exchange occurred:

> MR. WALKER: If you want -- well, as far as the obstruction is concerned.
>
> THE COURT: All right. Thank you.
>
> MR. WALKER: Just for the obstruction, just we're -- our -- my assessment, my legal assessment, of that particular provision we never objected to that once it

was included. It wasn't originally included in the initial, and we forego any objection based on the application notes in support of that particular provision.

THE COURT: All right. All right. Thank you.

[Record Nos. 281, pp. 7-8 and 360, p. 6] As the transcript indicates, Walker did not object to the enhancement. [Record No. 281, pp. 7-8]

After adopting the Presentence Investigation Report ("PSR"), the Court turned to Walker for discussion of the 18 U.S.C. § 3553(a) sentencing factors prior to Adkins' allocution. [*Id.* at pp. 10-14] Counsel began an argument to contextualize Adkins' role as it related to the fraud scheme's monetary intended loss that led to a thirty-level specific offense characteristic increase. [*Id.* at pp. 16-17] The Court attempted to refine Walker's argument, inquiring whether he believed that Adkins was a "minor player." [*Id.* at p. 16] Walker denied that this was his argument, and the Court continued:

> THE COURT: So it would be ironic to me -- well, we can say a person doesn't qualify under the guidelines for a role reduction, but perhaps is entitled to a variance under 3553 based on his role, that would be significantly greater than any role reduction he could get under the guidelines. It seems a bit curious.

[*Id.* at p. 17] Walker then further clarified: "I did not move for a minimal participant because I didn't believe that that was applicable. I am putting the intended loss in context, but I also have other arguments that would support a variance that would be coupled with that, which is a good segue." [*Id.* at pp. 17-18] Walker proceeded to make further § 3553(a) arguments, arguing that they justified a downward variance to a sentence between four and twelve years.[1] [*Id.* at pp. 18-28] The Court allowed Walker to make his arguments and engaged counsel throughout to further refine his points. [*Id.*]

---

[1] The PSR calculated Adkins' Guidelines Range to be 780 months' imprisonment, to be followed by one to three years of supervised release. [Record No. 271, ¶¶ 100, 104]

The Court then asked: "Would Mr. Adkins like to address the Court at this time, Mr. Walker?" [*Id.* at p. 28] Walker indicated that he would, and Adkins proceeded with allocution. [*Id.*] Adkins' points, like Walker's comments on the obstruction enhancement and § 3553(a) factors, resulted in the Court engaging the speaker on specific issues. After Adkins addressed his family circumstances, naiveté when he was involved in the scheme, and the changes in his life since the fraud scheme, the following exchange occurred:

> DEFENDANT ADKINS: ... the last time [the offense conduct] was supposed to have happened, you know, I believe was 2011, and that was six years ago. God and life have changed me very much, and they –
>
> THE COURT: Well, they didn't change you when you testified falsely before this Court and before the jury, Mr. Adkins. You testified falsely before the jury. You knew what the stakes were. You knew what the penalties were. You were advised of that by the magistrate judge when you first appeared. Now, time does go by, and it does change all of us, but it's important to me in determining the appropriate punishment to look at your testimony, and you flat-out lied to the jury. You tried to make the jury believe that you didn't sign very relevant documents that were key to the case. You stuck by that. You swore to tell an oath to tell the truth, and you didn't do it. Now, your attorney has made the argument that you were new when you started and when you got involved in this scheme, but practically what's happened is while you've been practicing, you've been engaged in this scheme your entire professional life. So what am I to draw from that? What am I to draw about your practice, your professional practice? Because the view I've seen of it is fraud and lies.
>
> DEFENDANT ADKINS: Your Honor, when I was made aware through agents over there when they came and visited me at the hospital I was working at, and they told me there's a problem, and –
>
> THE COURT: Well, you knew there was a problem. You knew what you were doing. You had been doing it for five years at that point. Was that a surprise to you that the agents -- this was after the Wall Street Journal article appeared in the paper.
>
> DEFENDANT ADKINS: Yes, it was, Your Honor. Your Honor --

[*Id.* at pp. 30-31]

Walker then interjected to frame the matter a different way:

> MR. WALKER: Dr. Adkins understands the current circumstances before the Court, meaning that he's been found guilty by a petit jury, and that by virtue of that decision they inherently had to find him not to be credible on the stand. He's also been attributed the United States Sentencing Guidelines scheme for impeding obstruction of justice. At this point my client does have certain appellate options available to him. Those appellate options are at this point, I'll just be honest with the Court, something that he hasn't decided whether he's going to pursue or not because we don't know what the judgment will be of Your Honor. But in maintaining in the -- I guess, in the attempt to maintain those options, if applicable, which I certainly will advise the Court that I have not legally assessed by any means at this point. That has not been my focus as far as strategy previous to this sentencing, but I would just caution that my client from – he's just going to maintain the position of trial pursuant to the wording I requested to be added into the Presentence Investigation Report.

[*Id.* at pp. 31-32] The Court informed Walker and Adkins that while it considers all information when determining an appropriate sentence, it does not have to accept all statements and points as true when the trial evidences that they are clearly false. [*Id.* at p. 32] Additionally, the Court explained that while Adkins may want to maintain and preserve his prior positions for appeal, it also has an obligation to complete the record by challenging points raised by the parties so that there is no indication that it agrees with such statements. [*Id.*]

After further discussion with Walker, the Court turned back to Adkins himself, allowing him to continue with allocution if he wished to do so. [*Id.* at p. 36] Adkins, who had expressed considerable emotion from the beginning of his remarks, indicated that he was afraid to speak but continued with allocution anyway. [*Id.* at pp. 28-29, 36] He stated:

> DEFENDANT ADKINS: Your Honor, and I would probably be better off just to say I'll never be in trouble like this again. I've never had any kind of feedback before the two agents met with me, and the lessons that I've learned for the rest of my life -- obviously, I'll never be practicing psychology again. But the lesson I've learned is that I will never be in this kind of trouble again. Anything that I do, if it's signing whatever, I will fully know what's going on. The -- in minutiae what is being done with this stuff. That's all I can really say, Your Honor.

[*Id.* at p. 36]

The sentencing hearing continued, and as the Court prepared to announce the sentence, it explained that it may question the remarks of parties and counsel at sentencing regardless of how defendants characterize such interactions, as this is a part of the reasoning necessary to formulate a logical sentence. [*Id.* at pp. 53-54] The Court also reiterated that even though Adkins did not want to admit that his trial testimony was perjurious, it "went to the very heart of charges in this matter" and was relevant at sentencing. [Record No. 56]

The Court eventually determined that a downward variance from Adkins' Guidelines Range of 780 months' imprisonment was appropriate due to the defendant's role in the scheme. [*Id.* at pp. 59-60] The Court sentenced Adkins to a term of 240 months on Counts 1, 2, and 7 to be served concurrently, and 60 months on Count 10, to be served consecutively for a total term of 300 months' imprisonment followed by 3 years of supervised release. [Record No. 267] The Court also imposed restitution in the amount of $93,082,584.56. [*Id.*]

Adkins appealed to United States Court of Appeals for the Sixth Circuit, challenging both his convictions and his sentence. As relevant here, Adkins specifically contended that his sentence was substantively unreasonable because the Court did not account for: (1) the disparities between his sentence and those of his co-conspirators (who, unlike Adkins, accepted plea agreements and were sentenced to the statutory maximums for the counts on which they entered guilty pleas); and (2) the collateral consequences of his sentence. *See United States v. Adkins*, 744 F. App'x 292, 299 (6th Cir. 2018). The Sixth Circuit rejected these arguments, affirming Adkins' sentence (and convictions) while noting that he received a downward variance to a term of incarceration less than half as long as that suggested by his Guidelines Range. *Id.* at 299-300.

Adkins, proceeding with counsel, then filed the present motion for collateral relief under 28 U.S.C. § 2255 on October 6, 2019. [Record No. 355] In addition to his allocution-based claim, he initially asserted an ineffective assistance of trial counsel claim. [*Id.*] The Court dismissed this claim on Adkins' motion. [Record Nos. 373 and 374] Now, Adkins only maintains that the Court's interactions with him and counsel denied him a meaningful opportunity for allocution in violation of the Fifth Amendment's Due Process Clause and Rule 32 of the Federal Rules of Criminal Procedure. [Record No. 355, p. 4] The United States has responded to the motion, arguing, in relevant part, that this claim is not a cognizable 28 U.S.C. § 2255 ground for relief, procedurally defaulted, and meritless. [Record No. 371, pp. 11-18] Adkins did not reply to the United States' response but has objected to the Magistrate Judge's R&R, which agrees with the United States' substantive arguments. [*See* Record Nos. 375 and 376]

**II.**

The United States and the Magistrate Judge are correct that Adkins has failed to allege a cognizable claim under § 2255. Section 2255(a) provides a prisoner with four broad grounds for relief from a sentence: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" and (4) the sentence "is otherwise subject to collateral attack." Adkins alleges that the failure to afford a meaningful opportunity for allocution constitutes a violation of the Constitution and Rule 32.

The Supreme Court of the United States addressed allocution-based § 2255 claims in *Hill v. United States*, 368 U.S. 424 (1962), finding that:

> [t]he failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.

*Id.* at 428. The Sixth Circuit has interpreted *Hill* to hold that "[t]here is no constitutional right to allocution." *E.g.*, *United States v. Vujovic*, 635 F. App'x 265, 272 (6th Cir. 2015) (citing *Hill*, 368 U.S. at 428; *Pasquarille v. United States*, 130 F.3d 1220 (6th Cir. 1997)). Further, it has broadly found that § 2255 claims based on a failure to afford allocution are not cognizable. *Okonkwo v. United States*, 7 F.3d 234 (Table), 1993 WL 384979, at *2 (6th Cir. 1993) (noting that the right to allocution "is not a constitutional dimension" and "its alleged violation is not cognizable in a § 2255 proceeding"); *Clay v. United States*, 996 F.2d 1214 (Table); 1993 WL 230294, at *1 (6th Cir. 1993) (holding that a defendant's "claim that he was denied an opportunity to speak on his own behalf prior to imposition of sentence is not cognizable in a motion to vacate sentence filed under 28 U.S.C. § 2255"); *Ludden v. United States*, 972 F.2d 347 (Table), 1992 WL 188119, at *2 (6th Cir. 1992) ("In any event, denial of the right of allocution is generally not cognizable in a § 2255 motion."). On at least one occasion, the Sixth Circuit has found no cognizable claim to exist under § 2255 when a defendant argues the sentencing court violated Rule 32's allocution provisions without alleging a constitutional violation. *Clay*, 1993 WL 230294, at *1.

Here, Adkins argues that the Court violated the right to a "meaningful opportunity" for allocution in violation of the Due Process Clause and Rule 32. [Record Nos. 355 and 360] His argument is somewhat difficult to follow, but he appears to assert that the Court refused to entertain Walker's arguments and "created an atmosphere that obviously rendered it difficult

for the defense to present an effective and potentially persuasive allocution," which constitutes a constitutional and Rule 32 violation when considered alongside the Court's remarks to Adkins during allocution. This is not a cognizable claim.

Even if the defendant argued that the Court completely prohibited Walker or Adkins from making remarks regarding the forthcoming sentence, there would be no cognizable claim because Supreme Court and Sixth Circuit caselaw proscribes such arguments based in the Constitution or Rule 32. *See*, *e.g.*, *Hill*, 368 U.S. at 428; *Pasquarille*, 130 F.3d at 1223; *Clay*, 1993 WL 230294, at *1. But Adkins does not argue this because the Court *did* hear from him as well as Walker. Instead, he makes an even more tenuous argument that the Court's interactions with him and Walker deprived him of a "meaningful opportunity" for allocution. If a constitutional or Rule 32 claim is not cognizable under § 2255 when the Court completely deprives a defendant of an opportunity for allocution, there is clearly no cognizable claim when he proceeds with allocution and his attorney offers arguments on his behalf.

Adkins objects to the R&R by again asserting that a failure to afford a meaningful opportunity is cognizable under the Due Process Clause. [Record No. 376, pp. 3-5] His argument centers around the idea that *Hill* was a narrow decision that "left open the question of whether a defendant who asks the court to speak has a Constitutionally guaranteed right to do so where, like here, there are 'other aggravating circumstances' in addition to a mere failure to comply with Rule 32." [*Id.* at p. 3] But as the Court's Part IV merits analysis explains, no Rule 32 violation occurred during the sentencing hearing. And while it may be true that *Hill* could be read narrowly, Adkins ignores the fact that the Sixth Circuit has more recently found that there is no constitutional right to allocution. *E.g.*, *Vujovic*, 635 F. App'x at 272; *Pasquarille*, 130 F.3d at 1223; *Okonkwo*, 1993 WL 384979, at *2. He cites no Sixth Circuit

authority to the contrary. His objection fails, and more generally, his allocution-based claim is not cognizable under § 2255.

## III.

Assuming for the sake of argument that Adkins' allocution-based claim is cognizable, the United States and Magistrate Judge Smith correctly indicate that it is procedurally defaulted. "In general, claims not raised on direct appeal cannot be raised in a § 2255 proceeding, with the exception of ineffective assistance of counsel claims." *United States v. Alexis*, 5: 13-69-DCR, 2016 WL 3004644, at *5 (E.D. Ky. May 24, 2016) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Massaro v. United States*, 538 U.S. 500, 504 (2003)). A defendant who fails to raise a claim that should have been raised on direct appeal has procedurally defaulted the claim and may only raise it in a § 2255 proceeding if he can demonstrate that: "(1) he had good cause for his failure to raise such [an] argument[] and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley*, 523 U.S. at 622).

Adkins argued on appeal that his sentence was substantively unreasonable. He based this argument on the Court's alleged failure to account for the disparities between his sentence and those of his co-conspirators as well as the collateral consequences of his sentence. *See Adkins*, 744 F. App'x at 299. He made no argument concerning failure to afford a meaningful opportunity for allocution. This is not an ineffective assistance of counsel claim, and he should have raised it on direct appeal. Therefore, it is procedurally defaulted.

Adkins makes no argument to cure the procedural default. His motion, supporting memorandum, and objections to the R&R do not contend that he is actually innocent or attempt to show cause or prejudice. [Record Nos. 355, 360, and 376]

The record also indicates that Adkins likely could not show cause and prejudice even if he attempted to do so. This is particularly true because part of his argument focuses on the Court's dialogue with Walker, and Adkins has retained Walker as counsel during and since the sentencing hearing. It is reasonable to expect counsel to remember the Court's interaction with him and raise the issue on direct appeal. Nothing in the record suggests that he could not have done so.

As noted, Adkins' objections to the R&R do not substantively address the Magistrate Judge's finding that the claim is procedurally defaulted. The only mention of the issue is his contention that "[a]s the Supreme Court emphasized, even if a prisoner cannot meet the cause and prejudice standard to excuse a procedural default, 'a federal court may hear the merits of the [] claims if the failure to hear the claims would constitute a "miscarriage of justice."'" [Record No. 376, p. 5 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).] This essentially concedes that the claim is procedurally defaulted and he cannot demonstrate cause and prejudice.[2]

The Court, therefore, agrees with Magistrate Judge Smith's analysis regarding procedural default. Adkins has procedurally defaulted this claim and has not carried his burden to overcome the default.

## IV.

Next, even assuming Adkins has a cognizable claim that is not procedurally defaulted, his motion would be meritless. Rule 32(i)(4)(A)(ii) provides that a sentencing court must "address the defendant personally in order to permit the defendant to speak or present any

---

[2] Still, as Part IV explains, Adkins' claim is clearly without merit, and there would be no "miscarriage of justice" to dismiss it as procedurally defaulted.

information to mitigate the sentence" before imposing a sentence. "A denial [of the Rule 32 right to allocution] generally occurs when a defendant is not, personally, and unambiguously, invited to address the court before sentencing, or when a court refuses to listen to the defendant's statement." *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004) (citing *Green v. United States*, 365 U.S. 301, 305 (1961); *United States v. Li*, 115 F.3d 125, 133 (2d Cir. 1997)) (internal citations omitted).

"A defendant's right to allocution 'is not unlimited,' both in terms of 'time' and 'content.'" *United States v. Oliver*, 441 F. App'x 328, 329 (6th Cir. 2011) (quoting *Carter*, 355 F.3d at 926). A court may interrupt a defendant's allocution to ask questions. *See United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011). Additionally, the Sixth Circuit has indicated that it is appropriate for a sentencing court to cut off a defendant during allocution when he attempts to make arguments contrary to a jury's credibility assessment. *See Vujovic*, 635 F. App'x at 272. Further, a sentencing court's "ongoing interaction" with a defendant does not violate the right to allocution where it "evidence[es] a substantive colloquoy bearing upon the sentence." *Carter*, 355 F.3d at 926-27 (citations omitted).

Here, the Court invited Adkins to speak on his own behalf and allowed him to do so. The Court asked Walker if Adkins would like to speak and allowed Adkins to proceed with allocution. When Adkins began to discuss how he was naive when he committed the offense and had changed since that time, the Court engaged the defendant on the subject because the jury's credibility assessment of his testimony indicated that he had lied during his recent trial. His lies resulted in an enhancement for obstruction of justice because the jury. Walker interjected during the hearing and indicated that Adkins was maintaining his innocence, and trial credibility, as a means of preserving the argument for appeal.

This entire portion of the interaction between the Court and Adkins during allocution evidences a colloquoy bearing upon the sentence. Moreover, the Court addressed Adkins' remarks that were contrary to the jury's credibility assessment of his trial testimony. Accordingly, these exchanges did not violate the Rule 32 right to allocution.

Importantly, the Court did not limit Adkins' ability to allocute after these exchanges. In fact, it expressly turned back to Adkins and allowed him to make more remarks. Adkins may have curtailed or tailored his final statements based on the course of the hearing, but the Court did not limit his speech.

Adkins' objections include several arguments concerning the Court's interactions with the defendant. He contends that Walker's interjection during Adkins' speech should not be characterized as an effort by counsel to curtail allocution. [Record No. 376, p. 6] This may be true, but it does not change the fact that Adkins' allocution was not substantively curtailed by anyone but himself. After Walker interjected, the Court returned to Adkins and allowed him to allocute again. He decided to say a few more words and end his allocution.

Adkins also objects that the time for allocution was shortened due to the Court's interactions with him and counsel. [*Id.* at p. 7] As noted, defendants do not have a right to speak without time and content limitations. *Oliver*, 441 F. App'x at 329. But again, the Court allowed Adkins to continue with allocution after discussing the parts of his statements that contradicted the jury's finding, and Adkins himself determined the appropriate time to end his speech.

Additionally, the defendant objects that the R&R does not address his argument that the Court made other troubling comments that weigh in favor or § 2255 relief. [Record No. 376, pp. 7-8] He refers to the comments concerning the defendant's characterization of its

earlier interactions with him and the relevance of his trial perjury. [Record No. 360, pp. 13-14] But these specific comments were made directly prior to the explanation and announcement of the sentence. They appear on pages 54 and 56 of the sentencing hearing transcript. [Record No. 281, pp. 54 and 56] Adkins ended his allocution on page 36 of the transcript. Thus, while the Court was justified in making such comments for the same reasons given for its direct interactions with the defendant, these comments had no bearing on allocution. Adkins claims they are relevant to his § 2255 claim because the Court soon imposed a sentence significantly higher than that recommended by the United States. [Record No. 360, p. 14] But this argument essentially attempts to relitigate the reasonableness of the sentence, which the Sixth Circuit conclusively affirmed on appeal.

Adkins' memorandum in support of his § 2255 motion also argues that Court did not entertain Walker's arguments at the sentencing hearing, contributing to the violation of his right to allocution. [Record No. 360, pp. 6-8] While Rule 32 affords defense counsel the ability to speak on a defendant's behalf, the rule permits "reasonable limitations" on a counsel's address to the court. *Oliver*, 441 F. App'x at 329-30; Fed. R. Crim. P. 32(i)(4)(A)(i). When a court entertains a defense counsel's argument but "simply reject[s] it," there is no violation of Rule 32. *Oliver*, 441 F. App'x at 330.

Adkins cites to two specific instances where the Court allegedly refused to entertain Walker's arguments. The first involved the Court's exchange with Walker regarding the obstruction of justice enhancement. He claims the Court interrupted Walker's attempt to object to the enhancement and "dismissed his argument with apparent impatience." [Record No. 360, p. 7] The Magistrate Judge charitably calls this assertion "perplexing." [Record No. 375, p. 7] The transcript reveals that Walker stated on the record that, based on his "legal

assessment" of the issue, he did not initially object to the enhancement once it was included in the PSR addendum and would not object at the sentencing hearing. There is no evidence to suggest that Walker ever intended to object, and he did not, in fact, object. Moreover, the Court did not prevent him from doing so, as it expressly asked Walker to comment on the enhancement. This exchange did not occur as Adkins now suggests, and it certainly did not violate Rule 32.

Adkins also cites to the exchange that concerned Walker's arguments about the proper context of his role as it related to a variance under § 3553 in an attempt to provide another example of the Court refusing to entertain counsel's points. [Record No. 360, pp. 7-8] Again, the Court actually entertained counsel's argument. It merely rejected the idea that Adkins should receive a role-based variance to a term of imprisonment significantly lower than that which could be obtained under the inapplicable U.S.S.G. § 3B1.2.[3] The Court did not refuse to entertain Walker's remarks, and this exchange did not violate Rule 32.

Adkins claims that Magistrate Judge Smith erred when she "turned a blind eye" to the Court's creation of a "hostile atmosphere" throughout its interactions with Walker and argues that the Magistrate Judge "attempted to rationalize" the Court's remarks that allegedly prevented counsel from objecting to the obstruction enhancement. [Record No. 376, pp. 8-9] The Court declines to engage Adkins' argument to the extent it accuses Magistrate Judge Smith of deliberately ignoring evidence to reach a specific result. Still, it is worth emphasizing, again, that Walker represented to the Court that his "legal assessment" of the obstruction enhancement issue led him to determine that an objection was inappropriate. [Record No. 281,

---

[3] Under certain circumstances, U.S.S.G. § 3B1.2 may decrease an offense level if defendants were minimal or minor participants in the crimes they committed.

pp. 7-8] Either he was untruthful at the hearing, or the defendant's present arguments regarding Walker's allegedly suppressed objection are dishonest.

The Court's interactions with Adkins or Walker do not survive the scrutiny of a Rule 32 analysis individually, or in the aggregate. The Court personally addressed Adkins, and its interactions with him challenged points that ran contrary to the jury's credibility assessment while generally evidencing a substantive colloquoy. The record clearly demonstrates that the Court entertained Walker's remarks even if it rejected the argument advocating for a more extensive § 3553(a) variance. Adkins generally argues the Court "created an atmosphere that obviously rendered it difficult for the defense to present an effective and potentially persuasive allocution." [Record No. 360, pp. 6, 8] But the specific exchanges he cites did not violate Rule 32 and do not, in the aggregate, arise to a violation of the right to allocution because counsel and the defendant were afforded ample opportunities to speak at the sentencing hearing. Therefore, his allocution-based claim, the only ground for relief pending in his § 2255 motion, is without merit.

V.

Adkins' memorandum in support of his § 2255 motion requests an evidentiary hearing. [Record No. 360, p. 20] An evidentiary hearing is not required in a § 2255 proceeding if "the record conclusively shows that the petitioner is entitled to no relief." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Here, Adkins' allocution-based claim is not cognizable in a § 2255 motion. Adkins has also procedurally defaulted because he failed to raise the issue on direct appeal. Additionally, the sentencing hearing transcript demonstrates that the claim is without merit.

An evidentiary hearing would not clarify any allocution issue any better than the transcript filed in the record. The Court accordingly declines to grant an evidentiary hearing.

## VI.

The Court also declines to issue a COA. A COA is appropriate "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When a district court denies a § 2255 motion on procedural grounds, the movant must demonstrate that: (i) jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right; and (ii) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the denial of a § 2255 motion is based on the merits, the defendant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

The Court finds that the § 2255 motion fails procedurally and on the merits. Adkins argues that the denial of a meaningful opportunity for allocution violated his due process rights, but he has failed to make the requisite showings for a COA to issue. Reasonable jurists would not find the Court's procedural and merit-based analyses debatable. This is particularly true because, as noted, "[t]here is no constitutional right to allocution." *Vujovic*, 635 F. App'x at 273; *Pasquarille*, 130 F.3d at 1223. And to the extent he challenges the alleged lack of a meaningful allocution opportunity as a violation of Rule 32, section 2253(c)(2) expressly precludes him from obtaining a COA because that is not a claim concerning the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *United States v. Trinkle*, 509 F. App'x 700, 701 (10th Cir. 2013). Still, the Court finds that reasonable jurists would not debate its analyses on the Rule 32 arguments. Accordingly, a COA shall not issue.

## VII.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The United States Magistrate Judge's report and recommendation [Record No. 375] is **ADOPTED IN FULL** and **INCORPORATED** by reference.

2. Defendant/Movant Alfred Adkins' motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2225 [Record No. 355] is **DENIED**. His claims are **DISMISSED**, with prejudice.

3. Adkins' request for an evidentiary hearing is **DENIED**.

4. A Certificate of Appealability shall not issue.

Date: March 20, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky